Charles PENNINGTON

v.

J. W. SINGLETON, III.

No. B-7763.

Supreme Court of Texas.

Sept. 12, 1980.

Rehearing Denied Oct. 22, 1980.

Ashley & Welch, Gregory L. Ceshker, Dallas, Longley & Maxwell, Philip K. Maxwell, Austin, for petitioner.

Dalton, Moore, Forde, Joiner & Stollenwerck, Thomas K. Boone, Dallas, for respondent.

McGEE, Justice.

This suit was brought by the purchaser of a boat for damages for misrepresentations made by the seller to induce the sale. The trial court rendered judgment for the plaintiff. The court of civil appeals, on motion for rehearing, reversed and rendered judgment that the plaintiff take nothing. 568 S.W.2d 367. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

The facts, as found by the trial court, are as follows: In May of 1975 J. W. Singleton sold his used boat, motor, and trailer to Charles Pennington. Singleton had never sold a boat before and was not in the business of selling boats. Singleton made oral statements to Pennington to the effect that the boat, motor, and trailer had just had $500 worth of work done, making the boat and motor in "excellent condition," "perfect condition," and "just like new." These statements were made as statements of material fact, and not as merely opinion or puffing. The statements were false because the gear housing of the motor had been cracked and inadequately repaired. Singleton did not know the statements were false, nor did he make the statements recklessly because he had not experienced any difficulty with the boat after it was repaired. Pennington relied on the statements and would not have purchased the boat without them.

In July of 1975 the gear housing required repairs costing $481.68 because at the time of the sale to Pennington, the gear housing was not in adequate condition for its intended use. The statements made by Singleton were found to have caused an unconscionable result.

The trial court's conclusions of law were that 1) Pennington had not proved the elements of common law fraud, and 2) that he had proved a cause of action under the Texas Deceptive Trade Practices–Consumer Protection Act. Accordingly, the trial court found that Pennington was entitled to an amount equal to three times his actual damages of $481.68. Before trial, however, the parties had agreed to a $500 limit on exemplary damages, if such damages were recoverable. Because of this stipulation the trial court's judgment was reduced to $981.68.

On appeal to the court of civil appeals, Singleton contended that the Deceptive Trade Practices–Consumer Protection Act (DTPA)[1] is inapplicable when the person misrepresenting goods or services is not in the business of selling or leasing those goods or services. The court of civil appeals, with one judge dissenting, disagreed and affirmed the trial court's judgment. In his motion for rehearing, Singleton contended that the treble damages provision of the DTPA could not be constitutionally ap-

---

1. The provisions of the DTPA in effect when the misrepresentations occurred govern the disposition of this case. See Woods v. Littleton, 554 S.W.2d 662, 666 (Tex. 1977). All references in this opinion to the DTPA are to the Act in effect at that time. See Tex. Laws 1973, ch. 143, at 322–43.

plied. The court of civil appeals agreed, holding that none of the subdivisions of § 17.46(b) were applicable, and that Singleton could not be held liable for treble damages under § 17.46(a) or § 17.50(a)(3) without a showing that his misrepresentations were made knowingly or with wrongful intent. Accordingly, the court of civil appeals reversed the judgment of the trial court and rendered judgment that Pennington take nothing.

Pennington's application for writ of error to this court was granted to consider whether the court of civil appeals correctly construed the DTPA as applied to a private cause of action.

■■■■ In *Woods v. Littleton*, 554 S.W.2d 662 (Tex. 1977), the principles applicable in construing the DTPA were set out. The primary emphasis is on the intention of the legislature, keeping in view "the old law, the evil and the remedy." Legislative intent should be determined from the language of the entire Act and not isolated portions. The court is not necessarily confined to the literal meaning of the words used, and the legislative intent rather than the strict letter of the Act will control. The Act itself provides in § 17.44 that it "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." *Id.* at 665.

To provide individual consumers with a method and incentive to discourage deceptive trade practices, the legislature included § 17.50, thereby creating a private cause of action for mandatory treble damages. *Woods v. Littleton, supra* at 670. Section 17.50(a) has four subdivisions, which list categories of prohibited conduct. A finding that the defendant's acts fall within one of these subdivisions may entitle the plaintiff to the remedies allowed by § 17.50(b). Sec-

tions 17.50(a) and (b) provide in pertinent part:

"Sec. 17.50. Relief for Consumers

"(a) A consumer may maintain an action if he has been adversely affected by any of the following:

"(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;

"(2) breach of an express or implied warranty;

"(3) any unconscionable action or course of action by any person; or

"(4) the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code, as amended, or rules or regulations issued by the State Board of Insurance under Article 21.21, Texas Insurance Code, as amended.

"(b) In a suit filed under this section, each consumer who prevails may obtain:

"(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended; . . ."

With these considerations in mind, we will determine whether Pennington has proved one or more causes of action under § 17.50(a), and if so, whether Singleton is liable for treble damages as provided in § 17.50(b).

## CONSUMER CAUSES OF ACTION UNDER § 17.50(a)

Section 17.50(a)(1) provides that a consumer may maintain an action for violations of § 17.46.[2] Section 17.46(a) declares unlawful any "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Section 17.46(b) lists a number of more specifically defined acts that are prohibited as being unlawfully false, misleading, or deceptive. Section 17.46(a) and the relevant subdivisions of § 17.46(b) provide:

"Sec. 17.46. Deceptive Trade Practices Unlawful

2. Section 17.50(a)(1) was amended in 1979 so that a private cause of action is no longer available under § 17.46(a).

"(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

"(b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts:

\* \* \* \*

"(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

\* \* \* \*

"(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
. . ."

Pennington contends that subdivisions (5) and (7) of § 17.46(b) are applicable to the misrepresentations made about the boat.[3]

■■■ Subdivision (5) prohibits representing that a good has characteristics, uses, or benefits that it does not have. The boat sold to Pennington was represented to have the characteristics of a "new" boat or a boat in "excellent" or "perfect" condition. The boat did not have these characteristics because of the cracked gear housing. The boat was also represented to produce the uses and benefits of a "new" boat or a boat in "excellent" or "perfect" condition. Because of the cracked gear housing, the boat could not produce those benefits. A good may lack its claimed characteristics or fail to bring about its claimed uses or benefits because it is not in good mechanical condition, or for other reasons such as its design or manufacture. In *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716 (Tex.Civ. App.–Dallas 1979, no writ), a vending machine was represented to have a certain selling capacity. Because it lacked that capacity, it was held to lack its claimed characteristics, uses, or benefits. *Id.* at 721.

We do not agree with Singleton's argument that false statements about the boat's mechanical condition did not relate to its characteristics, uses, or benefits. Regardless of the reason, when a good does not have the characteristics it is represented to have, or perform as represented, the injury to the consumer is the same. There is no justification for excluding some misrepresentations and including others on the basis of the reason for their falsity.

Subdivision (7) prohibits representing that a good is of a particular standard, quality, grade, style, or model if it is of another. Quality is a measure of degree; as to particular goods quality may be calibrated by standard or grade, as with eggs or meat, or specified by style or model, as with machinery. Even when specific categories are not devised, the good may still be described with more general words of quality. Words like "excellent" and "perfect" are words indicating a high degree of quality. Because the boat was in poor mechanical condition, its condition was of poor quality and the representations were false.

■■■ The terms used in § 17.46(b)(5) and (7) such as "characteristics" or "quality" are not defined in the DTPA. Therefore, they must be given their ordinary meanings. The general objective of subdivisions (5) and (7) is to ensure that descriptions of goods or services offered for sale are accurate. Misrepresentations, so long as they are of a material fact and not merely "puffing" or opinion, are nevertheless actionable even though they are broad descriptions such as were made to Pennington. The DTPA prohibits false general descriptions about the good, as well as misrepresentations pertaining to more specific information. Sometimes language only generally related to a product or its attributes will convey definite implications. *See* Shapo, *A Representational Theory of Consumer Protection: Doctrine, Function and Legal Liability for Product Disappointment*, 60 Va.L.Rev. 1109, 1330–33 (1974).

---

**3.** Subdivision (13), prohibiting knowingly made false statements concerning the need for repairs, may also have been applicable if Singleton's statements had been "knowingly" made.

Some overlap may occur as a result of broadly interpreting the listed violations in § 17.46(b). A broad interpretation is warranted, however, due to human inventiveness in engaging in deceptive or misleading conduct. The legislature did not intend its express purpose of protecting consumers from false trade practices to be circumvented by those who would seek out loopholes in the Act's provisions. For this reason, the legislature initially provided consumers with an action under the "catch–all" provisions of § 17.46(a), as well as for the violations listed in § 17.46(b).

According to Pennington, apart from a cause of action under § 17.46(b), he has alternative causes of action under § 17.-50(a). Before the 1979 amendments to the DTPA, misrepresentations not falling within any subdivision of § 17.46(b) could give rise to a cause of action under § 17.46(a). Pennington argues that by its literal terms, § 17.46(a) is applicable, the trial court having found that Singleton's statements were false and misleading. The trial court also found that the misrepresentations caused an unconscionable result. Section 17.-50(a)(3) gives rise to a private cause of action for "any unconscionable action," and, according to Pennington, is also applicable to the facts as found by the trial court. The court of civil appeals, however, denied recovery under § 17.46(a) and § 17.50(a)(3), reasoning that treble damages could not be constitutionally imposed without proof that Singleton intended to deceive Pennington or knew the falsity of his statements. This brings us to the decisive issue in this case: whether treble damages may be constitutionally imposed as a remedy for any of the causes of action allowed by § 17.50(a).

TREBLE DAMAGES UNDER § 17.50(b)

*Raising the Constitutionality Question*

■ Pennington contends that Singleton is not entitled to challenge the constitutionality of the DTPA because Singleton did not raise the argument until his motion for rehearing in the court of civil appeals. Pennington relies on several cases holding that the unconstitutionality of a statute is an affirmative defense, which is waived if not pleaded at trial. As pointed out in the court of civil appeals' opinion, however, because Pennington's petition alleged common law fraud and did not mention the DTPA, the applicability of these cases is questionable. 568 S.W.2d at 375. In view of our disposition of this case, we choose to consider the constitutionality question on its merits.

■ Pennington also questions Singleton's standing to challenge the constitutionality of the DTPA because the trial court did not actually award treble damages. As to this, we agree with the court of civil appeals' holding that the case must be treated as one in which treble damages were recovered. That court reasoned that the $500 awarded in addition to Pennington's actual damages were not awarded as exemplary damages, but rather as a recovery of statutory treble damages partially waived by stipulation.

*Does Treble Damage Liability Make the Consumers' Statutory Causes of Action Unconstitutionally Vague?*

Because of our holding that Pennington has proved a cause of action under § 17.-46(b), it is unnecessary to decide whether the court of civil appeals' holdings with respect to § 17.46(a) and § 17.50(a)(3) are correct. We will, however, consider Singleton's argument that if any subdivision of § 17.46(b) is applicable, it is unconstitutionally vague. That argument is based on the premise that treble damages under § 17.-50(b) make the causes of action granted by § 17.50(a) penal in nature. Thus, the violations giving rise to a cause of action under § 17.50(a) are subject to the certainty requirements of penal statutes. This principle is drawn from a widely recognized line of decisions holding that penal statutes must give fair notice of the prohibited conduct in order to come within constitutional due process limitations. *See Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 914 (1971); *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *State v. Shoppers World, Inc.,* 380 S.W.2d 107 (Tex.1964).

We first note that in the field of regulatory statutes governing business activity, greater leeway is allowed in applying the fair notice test. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). As stated by the United States Supreme Court in *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952): "Most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded." Statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). The statute should "convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States v. Petrillo*, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947).

In this case, Singleton told Pennington that the boat had just had work done, making its condition "excellent" and "perfect," and that the boat was "just like new." These statements were found by the trial court to be false and not merely statements of opinion or puffing. As such, they fell within the prohibitions of § 17.46(b)(5) and (7). The words used in these subdivisions are of common usage and describe the prohibited conduct with reasonable certainty. If Singleton had examined subdivisions (5) and (7), he would have been fairly apprised that his statements were misrepresentations of the boat's characteristics, uses, or benefits, as well as misstatements of its quality.

It is contended by Singleton that § 17.46(b) is unconstitutional because treble damage liability can be imposed under many of its subdivisions without any showing that the defendant intended to deceive the plaintiff or knew the falsity of his statements. His argument is that the absence of a requirement of knowledge or intent in a statute that is penal in nature makes it unconstitutionally vague. The fact that a statute limits punishment to acts done "knowingly" or requires specific intent as a prerequisite to punishment has been given weight by courts rejecting challenges made on the ground of vagueness. *See United States v. National Dairy Products Corp., supra* 372 U.S. at 35, 83 S.Ct. at 599; *Boyce Motor Lines v. United States, supra* at 342; *Screws v. United States*, 325 U.S. 91, 104, 65 S.Ct. 1031, 1036, 89 L.Ed. 1494 (1945).

The "laundry list" of violations in § 17.46(b) includes only four "acts or practices" under which intent or knowledge is expressly required before a violation of the Act will be found: subdivisions (9), (10), (13), and (17).[4] The legislature obviously was aware of the "intent" question since it did require intent or knowledge under these four subdivisions. Certainly if it meant for intent to be a requirement for all violations it would not have written it into four specific items without requiring it under the other subdivisions of § 17.46(b).

We are not persuaded that to impose an intent or knowledge requirement would make the provisions in question more definite. By requiring intent to deceive or knowledge of falsity, the realm of proscribed conduct would be restricted, but it would not necessarily be made more specific. The boundaries of illegality under the DTPA must remain flexible because it is impossible to list all methods by which a consumer may be misled or deceived. This flexibility is inherent in the statutory scheme and would not be reduced by an intent requirement.

It is unquestionably true that deception is more reprehensible when done intentionally and that liability for treble

---

4. The 1979 amendments to the DTPA added several-listed violations under § 17.46(b). Of these, subdivisions (22) and (23) contain elements of intent or knowledge.

damages is less harsh when intent is present. The necessity or reasonableness of specific enactments, however, is a matter of legislative discretion. *See Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968). Thus, the balance between expedience and fairness in application of the DTPA is the prerogative of the legislature, so long as constitutional limitations are not transgressed. We cannot hold that § 17.46(b) is unconstitutionally vague because it extends to misrepresentations made without knowledge of their falsity or to acts done without intent to deceive. Section 17.46(b) by its own terms extends to certain specified acts, not just to those acts done knowingly or with intent to deceive. The terms used are not so vague or indefinite as to violate due process, and we will not read into them an intent requirement merely to restrict the scope of their coverage.

*Is the Application of § 17.50(b)(1) to Singleton an Excessive Fine?*

Singleton has challenged the constitutionality of treble damage liability by arguing that even though the damages are paid to an aggrieved party and not to the State, they are an excessive fine in violation of both due process limitations and Article I, section 13 of the Texas Constitution.

■■■■ Article I, section 13 provides that excessive fines shall not be imposed. "Fines" as used in article I, section 13 includes civil penalties. *State v. Galveston, H. & S. A. Ry. Co.*, 100 Tex. 153, 97 S.W. 71, 78 (1906), *rev'd on other grounds*, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031 (1908). "The declaration in the Constitution that 'fines' shall not be excessive makes it a question for the court to decide under the facts of each particular case." *Id.* at 78. Generally, prescribing fines is a matter within the discretion of the legislature. A fine is not unconstitutionally excessive and the courts will not override the legislature's discretion, "except in extraordinary cases, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind." *State v. Laredo Ice Co.*, 96 Tex. 461, 73 S.W. 951, 953 (1903).

■■■■ Similarly, as to due process, the states possess a wide latitude of discretion in the matter of imposing fines, and "their enactments transcend the limitation only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mountain & Southern Ry. Co. v. Williams*, 251 U.S. 63, 66–67, 40 S.Ct. 71, 64 L.Ed. 139 (1919).

■■■■ A primary consideration in determining whether a fine is excessive is whether it is fixed with reference to the object it is to accomplish. *See St. Louis, Iron Mountain & Southern Ry. Co. v. Williams, supra* at 67. Large penalties for anticompetitive business practices and usurious interest rates have been upheld by Texas courts when considered in light of the abuse the penalties were designed to cure. *See State v. Laredo Ice Co., supra* at 953; *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249, 254 55 (Tex.Civ.App.--San Antonio 1978, writ ref'd n. r. e.).

■■■■ As stated above, one purpose of the DTPA's treble damages provisions is to encourage privately initiated consumer litigation, reducing the need for public enforcement. Probably the greatest obstacle to private consumer litigation is the high cost, in terms of money and time, that must be expended by the plaintiff. The small amount involved in the typical consumer claim does not justify these high costs of litigation. Recognition of this disincentive to sue may even encourage wrongful trade practices by some sellers. The legislature has provided for extra damage recovery so that consumers will have incentive to pursue their claims.

Another purpose of liability in excess of actual damages is to deter violations of the Act. Although liability for treble damages is harsh when imposed upon a seller who is not found to have made misrepresentations knowingly, we are unable to say that liability for unknowingly made misrepresentations goes beyond reasonableness in furthering the Act's purposes. A purchaser should be able to presume that his seller is

familiar with the item being sold and that the seller will not make representations about it when he is ignorant of the factual basis for his statements. The DTPA's prohibition of false trade practices by nonmerchants as well as merchants is also within the discretion of the legislature. It is probably true, as pointed out by Singleton, that a wider public will be served by deterring merchants from false trade practices than by deterring nonmerchants. Yet, the likelihood remains that even a nonmerchant may again sell goods or other services. Additionally, not only the defendant, but other sellers must be discouraged from deceptive and misleading trade practices.

Under the damage provisions of § 17.-50(b) before its amendment in 1979, the plaintiff's actual damages were automatically trebled. The plaintiff's recovery increased in a fixed proportion to his actual loss. This indicates an attempt by the legislature to proportion damages according to the seriousness of the wrong. We believe that, in addition to the amount of the plaintiff's loss, the defendant's culpability or lack thereof is an important consideration, and to some extent this is reflected by § 17.50(b) as amended in 1979. Nevertheless, the multiple damage scheme as it existed before amendment does not result in an unconstitutionally excessive fine in the case of sellers such as Singleton. The purposes of the DTPA are ostensibly furthered and the amount of liability bore some relation to the offense. Additionally, the prohibited conduct is described with a reasonable degree of certainty, furthering the policy of fairness to the defendant. *See generally* Rice, *Exemplary Damages in Private Consumer Actions*, 55 Iowa L.Rev. 307, 337–43 (1969).

## APPLICABILITY OF THE DTPA TO NONMERCHANTS

■ By cross–point Singleton urges that the DTPA does not apply to an isolated sale of a good by one who is not engaged in the business of selling that good. We agree with the court of civil appeals' first opinion, which held that the Act cannot reasonably be construed as so restricted. Section 17.46 prohibits false, misleading, or deceptive acts in "trade or commerce." "Trade" and "commerce" are broadly defined in § 17.-45(6) as "the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state." Section 17.50(a)(1) allows a private cause of action for "any person's" unlawful trade practice. "Person" is defined in § 17.45(3) as "an individual, partnership, corporation, association, or other group, however organized." No exception is provided for persons engaged in trade or commerce who are not in the business of selling; other exemptions are allowed in § 17.49.

The legislature explicitly defined the type of transactions included within the DTPA and the persons against whom a private action may be brought. No indication is made that persons not in the business of selling are to be excluded. Furthermore, it is reasonable to assume that the private action was included in the DTPA to provide a remedy for one–time abuses that could not be adequately handled by state enforcement. *See* Hill, *Introduction to Consumer Protection Symposium*, 8 St. Mary's L. J. 609, 611 (1977). For these reasons, we hold that a private cause of action is available against nonmerchants as well as merchants.

## CONCLUSION

For the reasons stated above, we conclude that the misrepresentations made by Singleton give rise to a cause of action under § 17.46(b) and that treble damage liability does not make § 17.46(b) unconstitutionally vague or unconstitutional as an excessive fine. Accordingly, we hold that Pennington is entitled to the relief granted under the DTPA by the trial court. The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

GREENHILL, C. J., concurs in the result.