Weldon **ROBINSON** et ux., Petitioners,

v.

**PRESTON CHRYSLER–PLYMOUTH, INC., Respondent.**

No. C–776.

Supreme Court of Texas.

April 14, 1982.

On Rehearing June 16, 1982.

---

Levin, Weinberg & Levin, Marvin L. Levin and Stanley I. Weinberg, Dallas, for petitioners.

DeHay & Blanchard, Charles A. Girand and Kevin J. Cook, Strasbuger & Price, James H. Moody, III, Dallas, for respondent.

RAY, Justice.

Weldon and Lurlene Robinson sued Preston Chrysler-Plymouth, Inc. for violations of the Texas Deceptive Trade Practices-Consumer Protection Act, (DTPA), Tex. Bus. & Com.Code Ann. § 17.46(a) and (b)(5), (6), and (7). The Robinsons alleged that they purchased a car from Preston in 1975, but that the car had been damaged, repaired and used as a lease car prior to the sale. Based upon the jury's verdict, the trial court rendered judgment for the Robinsons for $800, trebled, plus attorney's fees. The court of civil appeals reversed the judgment of the trial court and rendered judgment holding that failure to disclose facts without knowledge of those facts is not a deceptive trade practice. 620 S.W.2d 786 (Tex.Civ.App.). While we agree with this holding, we reverse the judgment of the court of civil appeals and remand the case to the trial court for a new trial on the Robinsons' misrepresentation claim.

The Robinsons testified that in January, 1975, they saw a Preston Chrysler-Plymouth advertisement in the newspaper. The ad announced, "SPECIAL SHIPMENT OF LEFTOVER '74 CHRYSLERS & PLYMOUTHS! JUST ARRIVED! Factory Special Purchase Direct from Chrysler!" Under this heading were pictured '74 Plymouth Furys, '74 Chrysler station wagons, '74 Plymouth Satellites and Sebrings, and '75 Chrysler Cordobas. The Robinsons went to Preston and asked to see the cars in the advertisement. The salesman showed them a '74 Chrysler four-door sedan, and told them that it was from the shipment in the ad. Although they noticed that the car had 1,800 miles on the odometer, the Robinsons testified that a salesman told them not to worry about the mileage because the car was new. The Robinsons subsequently bought the car.

About two months later the car was wrecked. During repairs the Robinsons learned for the first time that their car had been wrecked previously, and they later learned that it had been leased. At trial, Preston's vice president admitted that he knew that the car had been leased prior to the sale, but stated that he had no knowledge that the car had been wrecked and repaired. He testified that the car the Robinsons purchased was not from the shipment in the newspaper ad.

The jury found that the car had been damaged and repaired, that it had been used as a lease car, that Preston had failed to disclose these facts, that the failure to disclose these facts adversely affected the Robinsons, and that the fair market value of the car at the time of sale was $4,000. Since the Robinsons paid $4,800 for the car, judgment was rendered for the difference, $800, trebled, and attorney's fees.

The court of civil appeals reversed the judgment of the trial court and rendered judgment that the Robinsons take nothing. The court found no evidence that Preston knew the car had been wrecked and repaired, and thus, Preston had no duty to disclose such facts. In the opinion of the court of civil appeals, failure to disclose facts by one who has no knowledge of those facts is not a false, misleading, or deceptive act or practice. The court further held that, although Preston had knowledge that the car was used as a lease car prior to the purchase, the Robinsons could not recover under that finding because there was no evidence of damages due to the fact that the car had been leased.

■ The Robinsons' primary argument is that the court of civil appeals erred in holding that Preston's failure to disclose that the car had been wrecked was not a deceptive trade practice. They contend that one may commit a deceptive trade practice if he fails to disclose material facts to a buyer even if he has no knowledge of those facts. We do not agree with the Robinsons' argument.

At the time the Robinsons brought this action, failure to disclose material facts was not listed as one of the violations of the "laundry list" of section 17.46(b) of the DTPA. Thus, this failure to disclose claim must come within section 17.46(a), which prohibits all "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." The question is whether failure to disclose facts, in an action brought under section 17.46(a), prior to the 1979 amendments, is a deceptive trade practice if the speaker has no knowledge of those facts.

In 1979, section 17.46(b)(23) was added to the list of deceptive trade practices. Under subsection (23) one commits a deceptive trade practice if he fails to "disclose information concerning goods or services which was known at the time of transaction" if the failure to disclose was intended to induce the buyer into a transaction he would not have otherwise entered. Thus, the legislature has incorporated a knowledge requirement in this new example of a violation of the DTPA. Although section 17.-46(b) is only a list of deceptive trade practices, and is not all inclusive, an addition to section 17.46(b) is some indication of the legislative intent regarding the coverage of section 17.46(a). *See generally, Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269 (1944).[1]

The Robinsons rely on *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980). In *Pennington* we held that prior to the 1979 amendments treble damages could be recovered without proof of knowledge or intent under those subdivisions of the "laundry list" of section 17.46(b) that do not expressly require knowledge or intent. Since their claim does not come within the laundry list of section 17.46(b), the Robinsons urge that under *Pennington,* knowledge is not required. *Pennington* did not discuss whether knowledge or intent was required to prove a cause of action under section 17.-46(a). Also, *Pennington* was a misrepresentation case.

We recognize a distinction between misrepresentations and failure to disclose information, and agree with the court of civil appeals that one cannot be held liable under the DTPA for failure to disclose facts about which he does not know. When a seller makes representations to the buyer, he is under a duty to know if his statements are true. No such duty to know the facts are true arises when the seller does not make representations, but merely fails to reveal information which he does not know.

---

1. The legislative history of section 17.46(b)(23) supports this conclusion because it reveals that proponents of the amendment felt that "failure to disclose" was already covered by section 17.46(a). The amendment was proposed to insure that if section 17.46(a) was limited or eliminated, failure to disclose material facts by the seller would be an enumerated deceptive trade practice in the "laundry list." Further-more, it was stressed that a seller must have knowledge of the facts before he would be required to disclose them. Examples given of violations of (b)(23) were selling a house, knowing it was infested with termites, and selling a car, knowing that the transmission was bad, without revealing these facts to the buyer. Senate Floor Debate, S.B. 357, April 10, 1979, pp. 4–12.

In most consumer transactions, however, more than mere failure to disclose the facts is involved because the seller normally makes some representation about the goods. In this case, there is evidence not only of Preston's failure to disclose facts, but that Preston made misrepresentations to the Robinsons. Preston advertised in the local newspaper that it was selling '74 Chryslers and Plymouths "direct from Chrysler." The Robinsons asked to see cars from the shipment in the ad and were told the car that they purchased was from that shipment.

Although this case went to the jury only on the failure to disclose issue, the Robinsons pleaded violations of sections 17.46(a) and 17.46(b)(5), (6), and (7). As stated before, section 17.46(a) prohibits all "false misleading, or deceptive acts or practices in the conduct of any trade or commerce." Subsections (5), (6), and (7) concern misrepresentations. Subsection (b)(5) prohibits representing that a good has "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities" that it does not have, and subsection (6) prohibits representing goods are new if they are "deteriorated, reconditioned, reclaimed, used, or second-hand." Subsection (7) prohibits representing that a good is "of a particular standard, quality, or grade," "style, or model," if it is not.

The Robinsons also argue that the court of civil appeals erred in rendering judgment and not remanding the case for new trial because they requested several misrepresentation issues which were refused by the trial court. One issue would have inquired whether Preston represented to the Robinsons that the car was "of a particular standard or quality when it was of another." Other issues inquired whether Preston represented that the car had sponsorship or ingredients it did not have, and whether Preston represented that the Robinsons were original owners of the car when it was previously owned.

We agree that the trial court should have submitted misrepresentation issues to the jury. Consequently, we reverse the judg-ment of the court of civil appeals and remand the case to the trial court for a new trial.

BARROW, Justice, dissenting.

## ON MOTION FOR REHEARING

I respectfully dissent from that part of the opinion of April 14, 1982 which reverses and remands the case to the trial court for a new trial on the Robinsons' misrepresentation claim. The basis for the remand was the trial court's refusal to submit the Robinsons' requested misrepresentation issues. Any error in this regard was not properly preserved by the Robinsons for review because it was not assigned as a cross-point in the court of civil appeals. This error was therefore waived by the Robinsons. Rule 420, Tex.R.Civ.Pro.; *Hernandez v. City of Fort Worth*, 617 S.W.2d 923 (Tex.1981); *Jackson v. Ewton*, 411 S.W.2d 715 (Tex. 1967); *see* Skaggs & Denison, *The Appellee's Brief*, in State Bar of Texas, Appellate Procedure in Texas § 15.16 (2d ed. 1979).

GREENHILL, C. J., and POPE, J., join in this dissent.