Steve NAGY, Appellant,

v.

The FIRST NATIONAL GUN
BANQUE CORPORATION, Appellee.

No. 05–83–00321–CV.

Court of Appeals of Texas,
Dallas.

June 6, 1984.

Robert G. Oake, Jr., Stephen L. Hubbard, Harold Gold, Dallas, for appellant.

Chris B. Harper, Nancy A. Thomas, Charles L. Perry, Dallas, for appellee.

Before AKIN, SPARLING and SHUMPERT, JJ.

SHUMPERT, Justice.

Appellant Nagy appeals from a judgment rendered under the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon Supp.1984) (the DTPA). Nagy contends that the court applied an improper standard in finding that he knew or should have known of a collision involving a motor home which he sold and that there was insufficient evidence to support such a finding. Because we agree with these contentions, we need not address his other points of error. In three counterpoints, appellee First National Gun Banque Corporation (First National) contends that its other claims were established as a matter of law and, therefore, the trial court erred in denying these claims. We hold that there was sufficient evidence to support the judgment denying these claims. Accordingly, the judgment of the trial court is reversed, and judgment is rendered that appellee, First National, take nothing.

First National purchased a used 1973 model motor home from Nagy in 1980. Neither party was in the business of buying or selling such vehicles. Nagy had purchased the vehicle used in 1977. First National brought suit alleging that Nagy had made various false representations about the mechanical condition of the vehicle and that it was damaged to the extent that repairs had to be made. After trial to the court, First National was awarded damages on the basis of Nagy's representation that to the best of his knowledge the vehicle had not been in a collision. First National was awarded three times the amount of its actual damages over $1,000 on the authority of section 17.50(b)(1) of the DTPA. Its claims for damages attributable to other alleged misrepresentations were denied.

Nagy moved for findings of fact and conclusions of law. The trial judge

had previously informed the parties what his decision would be and the reasons therefor. These statements, and the discussion thereon, appear in the statement of facts. In response to Nagy's request, the trial judge filed a document entitled "Findings of Fact and Conclusions of Law." In that document the trial judge makes no findings or conclusions but refers to the portion of the statement of facts wherein he announced his ruling and the reasons therefor. He incorporates by reference those pages, which are attached to the document entitled "Findings of Fact and Conclusions of Law." We do not approve of this method of filing findings of fact, nor does it comport with rule 296. The narrative, conversational nature of the "findings" make it difficult to determine exactly what was held. As best we can determine, the trial court found that Nagy knew or should have known that the vehicle had sustained collision damage and, therefore, that his statement was a violation of the DTPA. Both parties on appeal assume that this was the basis of the judgment and since this is the only theory on which the judgment can be upheld, we will discuss these issues as if the trial court had specifically so found.

### Actual Knowledge

The trial court found that Nagy knew or should have known that the vehicle had been in a collision. The court concluded that Nagy's statement, that it had not been in a collision to the best of his knowledge, constituted a violation of the DTPA. Nagy contends that, due to the nature of his representation, liability cannot be established without a finding that he actually knew that the vehicle had been in a collision. We agree.

Nagy represented that to the best of his knowledge the vehicle had not been in a collision. He did not represent that it had not been in a collision. Assuming that the vehicle had been in a collision, and assuming that he had represented that it had not, liability could have been based on the representation without a finding of actual knowledge. *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980). *Pennington* is distinguishable from this case. In *Pennington,* the representation made alleged that the boat in question was in excellent and perfect condition. It was not. Liability was found even though the seller believed that his statements were true. The falsity of the representation, not the seller's intentions, predicated liability. The representation in *Pennington* was false even though the seller did not know it was false. Here, Nagy represented that to the best of his knowledge the vehicle had not been in a collision. This statement is false only if it can be shown that Nagy actually knew that it had been in a collision. Therefore, liability cannot be based on a finding that he knew or should have known. Without a direct finding of actual knowledge there was no misrepresentation. Misrepresentation is an essential element of First National's cause of action. *Ogden Food Service Corp. v. Mitchell,* 614 F.2d 1001 (5th Cir.1980).

First National contends that even if the statement was literally true it could still have been deceptive. The test is whether the statement has a tendency to deceive the ignorant, the unthinking, and the credulous who do not stop to analyze but are governed by appearances and general impressions. *Spradling v. Williams,* 566 S.W.2d 561, 563 (Tex.1978); *Sam Montgomery Oldsmobile Co. v. Johnson,* 624 S.W.2d 237, 241 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). In *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777 (Tex.1980), a salesman stated that he believed the vehicle for sale had an eight-cylinder engine. Other representations as to the number of cylinders were also made. These statements were held to be a violation of the DTPA. In that situation it was immaterial whether or not the salesman actually believed the vehicle had eight cylinders. The various representations, taken as a whole, tended to deceive the non-expert buyer.

There must be some misrepresentation or failure to disclose that constitutes

the deception. Nagy's statement, on its face, did not preclude the possibility that the vehicle had been in a collision prior to the time he purchased it. First National was aware that Nagy was not the original owner. In this respect, our case is easily distinguishable from *Duncan*. In *Duncan*, the various representations, taken together, left the buyer with only one possible impression: the vehicle had eight cylinders. A representation by the second owner of a used vehicle, who was not in the business of selling or repairing vehicles, that to the best of his knowledge, the vehicle had not been in a collision, is not a deceptive act absent a showing that he actually knew the vehicle had been in a collision.

### Evidence of Actual Knowledge

■ Nagy further contends that there was no evidence to support a finding of actual knowledge. In deciding this point, we must consider only that evidence and permissible inferences therefrom which support the findings, viewing it in the most favorable light and rejecting all evidence to the contrary. *Connecticut General Life Insurance Co. v. Stice*, 640 S.W.2d 955, 957 (Tex.App.—Dallas 1982, writ ref'd n.r. e.).

There is no direct evidence that Nagy knew that the vehicle had been in a collision. First National relies on circumstantial evidence. Four facts were shown to support First National's position. First, Nagy replaced the tires on the vehicle two or three times during the period he owned it. Second, the vehicle was not properly aligned. Third, a rear suspension arm had been broken and welded back together. And fourth, such a break, according to First National's expert, could have occurred only in a collision. From these facts, First National would have the court infer actual knowledge of the alleged collision.

■ In order to reach this conclusion, we must infer that because Nagy replaced the tires so frequently he must have known of the alignment problems. This is a reason-able inference. We must then infer that he checked under the vehicle and saw the welded arm. This, too, is reasonable. We must then further infer that upon seeing the weld Nagy became aware that the vehicle had been in a collision. This inference is difficult to support since Nagy was not an expert in this field.

■ Even if that inference is reasonable, we cannot reach the conclusion that he actually knew of the collision. Even if these inferences are reasonable, they are not permissible because First National is inferring facts from previously inferred facts. Stacking of inferences to reach an ultimate conclusion is not allowed. *Briones v. Levine's Department Store, Inc.*, 446 S.W.2d 7, 10 (Tex.1969); *Regal Petroleum Corp. v. McClung*, 608 S.W.2d 276, 278 (Tex.Civ.App.—Dallas 1980, no writ). We hold, therefore, that there was no evidence to support a finding of actual knowledge.

### Crosspoints

First National pleaded that Nagy made other misrepresentations concerning the mechanical condition of the vehicle. The court considered these claims and expressly denied recovery. In three crosspoints, First National contends that liability based on these representations was established as a matter of law. We disagree.

■ First National's expert witness testified that the alleged defects were present when he examined the vehicle six months after it was purchased. He further testified that these defects probably were present at the time of the purchase but could not rule out the possibility that some, if not all, occurred after the purchase. Therefore, we are unable to hold that First National has established the claims as a matter of law and overrule First National's crosspoints.

Accordingly, the judgment of the trial court is reversed. Because we hold that there was no evidence to support a finding

of actual knowledge, we render judgment that First National take nothing.

Reversed and Rendered.