# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00307-CV

---

**Robert Anding and Roberta Anding, Appellants**

**v.**

**City of Austin, Texas; and Ferdinand D. Clervi, Austin Municipal Court Judge, Appellees**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-002142, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This appeal arises from a constitutional challenge to the City of Austin's regulations of short-term rental (STR) properties. *See* Austin, Tex., Code §§ 25-2-788–799 (STR ordinance). Robert and Roberta Anding, who own a house in Austin that they rent for short time periods, sued the City for declaratory and injunctive relief after the City cited them for violations of the STR ordinance. In their suit, the Andings claimed that the STR ordinance was unconstitutionally vague as applied to them. In the same suit, the Andings sought mandamus relief against Austin Municipal Court Judge Ferdinand D. Clervi related to his review of the administrative hearing of the STR-ordinance violations. The district court granted summary judgment in favor of the City on the Andings' constitutional claim and sustained Clervi's plea to the jurisdiction as to the Andings' mandamus claim. We affirm the summary judgment and reverse the ruling on the plea to the jurisdiction.

## The City of Austin's STR Ordinance

The City 's STR ordinance applies to "short-term rental use" that is "rented for periods of less than 30 consecutive days." *Id.* §§ 25-2-788–790; *see id.* § 25-2-3(10) (defining "short-term rental use" as, relevant here, "the rental of a residential dwelling . . . on a temporary or transient basis"). Property owners whose short-term rentals are subject to the STR ordinance must satisfy eligibility criteria and obtain a license before being allowed to rent their property on a short-term basis. *See id.* §§ 25-2-788–794, -796. Short-term rentals are divided into three categories:

- Type 1—single-family residence that is "owner-occupied or is associated with an owner-occupied principal residential unit," *id.* § 25-2-788(A)(2);

- Type 2—single-family residence that "is not owner-occupied and is not associated with an owner-occupied principal residential unit," *id*. § 25-2-789(A)(3);[1] and

- Type 3—residence that is "part of a multi-family residential use," *id*. § 25-2-790(A)(2).

The STR ordinance also imposes several use restrictions on short-term rentals. *See id.* § 25-2-794(A)–(C) (noise restrictions), (D) (building requirements), (E)–(G) (advertising restrictions), 25-2-796 (requiring local contact).[2]

---

[1] As a practical matter, the difference between type-1 and type-2 status depends on whether the owner claims the property as a homestead for tax purposes. *See* Austin, Tex., Code § 25-2-788(A)(2), -789(A)(3); *see Zaatari v. City of Austin*, No. 03-17-00812-CV, 2019 WL 6336186, at *2 n.1 (Tex. App.—Austin Nov. 27, 2019, no pet. h.). Further, the City amended the STR ordinance in 2016 to eliminate type-2 rentals as of 2022, but this Court recently declared that amendment unconstitutional. *See Zaatari*, 2019 WL 6336186 at *7–10 (declaring section 25-2-950 unconstitutional).

[2] The STR ordinance also includes certain occupancy restrictions that this Court has declared unconstitutional. *See* Austin, Tex. Code § 25-2-795; *Zaatari*, 2019 WL 6336186 at *10–18 (declaring section 25-2-795 unconstitutional).

## Background[3]

The Andings, whose principal residence is in Houston, own a 5,000 square foot, six-bedroom vacation house in Austin that they rent to others when they are not themselves using the property. In an effort to avoid the City's STR ordinance, the Andings only enter into lease agreements that are for periods of 30 days or more. A third-party company manages and leases the Andings' house.[4]

The Andings' 30-day leases are often signed by multiple, unrelated tenants. The leases state that every signatory has "full possessory interest and right of enjoyment" of the Andings' house "for the entire [t]erm of the [l]ease." The leases permit signatories to "enter into their own separate agreement for the sharing of the" Andings' house, "including agreed upon periods of occupancy," but any such separate agreement does not relieve the signatories of their obligations under the lease with the Andings.

When the Andings enter into a multi-tenant lease, their third-party manager provides the signatories with a "Co-Tenant Agreement" or "Tenant Agreement" form that specifies how the tenants will share the Anding lease costs and occupancy. Under the co-tenant agreement, each co-tenant agrees to "only access the [p]roperty during the dates allocated to such" co-tenant and to share proportionately the rent due under the Anding lease. The co-tenant agreement specifies that the Andings and the third-party management company are not parties to the co-tenant agreement.

---

[3] The facts underlying this case are, unless otherwise indicated, undisputed and are taken from the record and briefs before us.

[4] Because their house in Austin is not their principal residence, the Andings, if subject to the ordinance, would be required to obtain a type-2 license. *See* Austin, Tex. Code § 25-2-789(A).

In sum, the Andings rent their Austin house for periods of 30 consecutive days, but they do not directly limit how the signatories to a multi-tenant lease share the lease term and rent due. For example, using the rental documents that are in the record before us, the Andings rented their house to three separate tenants for the period May 27 to June 26, 2016, at a total cost of $21,396. The three signatories to the May 27 lease agreed in a "Co-Tenant Agreement" provided by the third-party manager that one tenant would pay $5,296.24 for the right to occupy the property from May 27 through 30; the second tenant would pay $8,462.58 for June 12 through 19; and the third would pay $7,637.53 for June 20 through 27.[5] In the second lease that is in the record before us, the Andings rented their house for the period July 1 through July 31, 2016, at a total cost of $8,710.02. The "Tenant Agreement" specified that Robert Anding was entitled to stay at the house from July 1 through July 5 for $0; the second tenant was entitled to stay from July 7 through July 10 for $4,959.38; and the third tenant was entitled to stay from July 12 through 15 for $3,750.64. The final lease included in the record has only one signatory and is for the period September 10 through October 10, 2017 at a cost of $3,056.15.

In April 2016, a nearby homeowner complained to the City about the Andings' house. In response, the City sent out code-enforcement officers to investigate. Based on their interviews with occupants of the Andings' house, the officers issued four administrative citations (dated May 14, 20, 27, and July 8, 2016) to the Andings for operating without an STR license—specifically, for violating ordinance section 25-2-789 (type-2 rental). The officers later testified that they had asked the tenants how long they were staying, not the term of their leases, and, if

---

[5] The lease states that the lease term ended June 26, but the co-tenant agreement stated that occupancy was through June 27.

the tenant answered by saying less than 30 days—e.g., "the weekend"—the officers issued a citation.

The Andings paid the fines due under the May/July 2016 citations, but challenged their validity in an administrative-hearing process. *See* Austin, Tex. Code §§ 2-13-1–25-13-32 (administrative adjudication of violations). The Andings argued that their rentals were not subject to the City's STR ordinance because the leases were for 30 days or more. After an evidentiary administrative hearing, the City's hearing officer fined them $600 after concluding that the Andings had violated the STR ordinances because, based on the underlying facts, they were renting the property to individuals and groups for less than 30 days.

The Andings appealed the hearing officer's decision regarding the May/July 2016 citations to the Austin municipal court. *See* Tex. Loc. Gov't Code § 54.044 (alternative procedure for administrative hearing); Austin, Tex. Code § 2-13-31 (providing for appeal of administrative hearing to municipal court). Ultimately, the municipal court judge, Clervi, affirmed the hearing officer's decision and denied the Andings' motion for new trial.

In April 2017, the City cited the Andings twice more for violation of the STR ordinance (on April 1 and 7) after a code-enforcement officer determined that the renters were staying at the house for periods of only a few days. The April violations were adjudicated in a second administrative hearing before a hearing officer, who determined that the Andings were in violation of the STR ordinance and assessed a fine of $4,445. The hearing officer based his determination on his conclusion that the co-tenant agreement "functionally nullifies the 30-day nature of a [third-party manager] customer's lease" of the property because the co-tenant is agreeing to not stay for the full 30 days. The Andings acknowledged in this hearing, according

5

to the hearing officer's decision, that their leases in this case were no different than the leases in the first administrative hearing.

The City cited the Andings again on September 29, 2017. The City issued this violation based on the tenant's statement to the code-enforcement officer that she was only staying a few days, but that she was not part of a shared lease agreement. In response to a September 29, 2017 email from the City's code-enforcement officer, the Andings' third-party manager provided the City with a copy of the September 2017 lease, which has only one signatory and is for the period September 10 through October 10, 2017 at a cost of $3,056.15. The September 2017 citation has not been adjudicated in an administrative-hearing process.

After the municipal-court judge affirmed the first administrative-hearing decision regarding the May/July 2016 citations, the Andings filed the underlying suit against the City, seeking declaratory and injunctive relief related to the City's citations. The Andings asserted that the City's STR ordinance is unconstitutionally vague as applied to the Andings because it does not give fair notice that leases violate the ordinance if some, any, or all of the tenants do not actually stay at the home for a continuous 30 days or if the tenants share the rent and periods of possession. As relief, the Andings asked the district court to enjoin the City from enforcing the STR ordinance as to leases of 30 days or more where (1) any tenant does not physically reside at the property for the full possessory term of the lease, or (2) where multiple tenants agree among themselves to share periods of physical occupancy and costs.

In the same suit, the Andings sought mandamus relief to compel "the ministerial act that Judge Clervi apply the law correctly where the facts and circumstances demonstrate that there is only one rational decision." The correct law to be applied by Clervi, according to the

6

Andings, is that their leases are exempt from the STR ordinance because their leases are for 30 days or more.

The parties filed cross-motions for summary judgment on the Andings' constitutional claim. The City's motion for summary judgment included an assertion that the district court lacked jurisdiction over the Andings' claims. Clervi filed a plea to the jurisdiction challenging the Andings' request for mandamus relief. The district court denied the Andings' motion for summary judgment, granted the City's motion for summary judgment, and sustained Clervi's plea to the jurisdiction. This appeal ensued.

## Discussion

The Andings raise three issues on appeal: (1) whether the district court erred in its summary-judgment decision because the STR ordinance is unconstitutionally vague as applied to the Andings; (2) whether the district court had jurisdiction over the Andings' claims; and (3) whether the district court erred in granting Clervi's plea to the jurisdiction on the Andings' request for mandamus relief. We begin by addressing the district court's jurisdiction over the Andings' constitutional claims against the City.

### Jurisdiction

In its plea to the jurisdiction and motion for summary judgment, the City challenged the district court's jurisdiction over the Andings' claim, arguing that the Uniform Declaratory Judgments Act (UDJA) does not waive immunity for a declaration of rights under an ordinance. *See generally* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. The district court did not rule on the plea to the jurisdiction, but it did grant the City's motion for summary judgment without relying on any specific grounds. On appeal, the Andings contend that, to the extent that

7

it concluded otherwise in granting the summary judgment, the district court had jurisdiction over its constitutional claim. We agree.

As the City explains, the UDJA does not waive immunity where the plaintiff seeks a declaration of rights under a statute or ordinance. *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). However, our review of the record indicates that the Andings nonsuited their declaration-of-rights claim by omitting it from their live pleading, leaving (as to the City) only their claim that the ordinance is unconstitutionally vague. The UDJA does waive immunity for claims alleging that a statute or ordinance is unconstitutional. *See City of El Paso Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009) (noting that UDJA waives sovereign immunity for claims challenging the validity or a statute or ordinance because it requires service on the attorney general in suits where a statute or ordinance is alleged to be unconstitutional). Accordingly, the district court had jurisdiction over the Andings' constitutional claims.

**The Andings' Vagueness Challenge**

In their first issue, the Andings argue that the district court erred in denying their motion for summary judgment and granting the City's motion on their claim that the City's STR ordinance is unconstitutionally vague as applied to them. Specifically, they argue that the ordinance's phrase "rented for periods of less than 30 consecutive days" is vague as applied to them because the City has cited them for violations even though their leases satisfy the ordinance's facial requirements. They also argue that the ordinance is vague as applied to them because the City construes the ordinance as requiring mandatory, physical occupancy by any tenant for the full term of a 30-day lease, even where there is only one tenant under a 30-day lease.

8

Ordinances are subject to the same constitutional requirements and construction canons as statutes. *Mills v. Brown*, 316 S.W.2d 720, 723 (Tex. 1958) ("The same rules apply to the construction of municipal ordinances as to the construction of statutes."). To determine whether a statute is unconstitutionally vague, we begin by presuming that the statute is constitutional. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). The party challenging the statute's constitutionality has the burden of showing that the statute fails to meet constitutional requirements. *Id.* A statute or ordinance is unconstitutionally vague if the persons regulated by it are exposed to risk or detriment without fair warning or if it invites arbitrary and discriminatory enforcement by its lack of guidance for those charged with its enforcement. *See Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 437 (Tex. 1998); *Texas Liquor Control Bd. v. Attic Club, Inc.*, 457 S.W.2d 41, 45 (Tex. 1970); *City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 646 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Implicit in this constitutional safeguard is the idea that laws must have an understandable meaning and must set legal standards that are capable of application. *Lindig v. City of Johnson City*, No. 03-11-00660-CV, 2012 WL 5834855 at *3 (Tex. App.—Austin Nov. 4, 2012, no. pet) (mem. op.) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 559 S.W.2d 92, 94 (Tex. App.—Dallas 1977, writ ref'd n.r.e.)). "It is established that a law fails to meet the standards of due process if it is so vague and standardless as to leave a governing body free to decide, without any legally fixed guidelines, what is prohibited in each particular case." *Id.* Due process is violated and a law is invalid if persons of common intelligence are compelled to guess at a law's meaning and applicability. *Pennington v. Singleton*, 606 S.W.2d 682, 689 (Tex. 1980); *Attic Club*, 457 S.W.2d at 45; *Signad*, 682 S.W.2d at 646.

Regulatory statutes governing business activity are allowed greater leeway than is allowed criminal statutes in applying the "fair notice" test. *Pennington*, 606 S.W.2d at 689 (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) ("In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed.")). "A law is not unconstitutionally vague merely because it does not define words or phrases." *Vista Healthcare, Inc. v. Texas Mut. Ins.*, 324 S.W.3d 264, 273 (Tex. App.—Austin 2010, pet. denied). Only a reasonable degree of certainty is required, *id*. (citing *Pennington*, 606 S.W.2d at 689), and the reasonable-certainty requirement "'does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.'" *Signad*, 682 S.W.2d at 646–47 (quoting *Sproles v. Binford*, 286 U.S. 374, 393 (1932)). Moreover, "the mere fact that the parties disagree as to [an ordinance's] meaning does not mean we must necessarily guess at its meaning." *Mills v. Fletcher*, 229 S.W.3d 765, 770 (Tex. App.—San Antonio 2007, no pet.); *see Vista Healthcare*, 324 S.W.3d at 273.

Applying these principles, we conclude that the STR ordinance's applicability provision gives fair warning of what conduct will render a residential rental subject to the ordinance. The ordinance states that it applies to "short-term rental use" that "is rented for periods of less than 30 consecutive days." Austin, Tex. Code §§25-2-788 (type 1), -789 (type 2), -790 (type 3). Using the common and ordinary meaning of "rent" and "rental" and incorporating the City Code's definition of "short-term rental use," this means that the City's STR ordinance applies to the paid-for grant of occupancy or use of a residential dwelling for less than 30 consecutive days. *See id.* § 25-2-3(B)(10) (defining "short-term rental use" as "the rental of a residential dwelling . . . on a temporary or transient basis"); *American Heritage Dictionary of the English Language* 1488 (5th ed. 2011) (defining verb "rent" as "to grant temporary occupancy or

10

use (of one's own property or a service) in return for regular payments"; and "rental" as "the act of renting"); *Rent*, *Black's Law Dictionary* (10th ed. 2014) ("To pay for the use of another's property.").

Standing alone, an Anding 30-day lease would fall outside the plain language of the ordinance because the lease grants the right to use or occupy the house for 30 consecutive days in return for payment—i.e., under such a lease, the Andings' house is rented to the lessee (or lessees) for a period of 30 consecutive days for a certain dollar amount. But the 30-day lease cannot be the end of our inquiry where, as here, there is more to the transaction. This is because the applicability provision focuses on "the rental," not on the owner's conduct or the first transaction: "*the rental* of a" residence, *id.* § 2-2-3(B)(1) (defining "short-term rental use") (emphasis added), "that *is rented* for periods of less than 30 consecutive days," *id.* § 25-2-789(A)(1) (type-2 applicability provision) (emphasis added). Here, the adjudicated citations were issued in situations where the lessee signatories to a 30-day lease had entered into co-tenant agreements among themselves to divide the period of possession and the total rent due. In other words, each signatory granted to the other signatories, in return for consideration (i.e., a reduction in the total lease cost), the right to exclusively occupy or use the house for portions of the 30-day term they each had a right to. As such, the Andings' house was "rented for periods of less than 30 consecutive days" and, consequently, the transactions fall under the plain language of the STR ordinance's applicability provision. *See id.* § 25-2-789(A)(1); *see also Amco Trust, Inc. v. Naylor*, 317 S.W.2d 47, 50 (Tex. 1958) (explaining that if a lessee who transfers all or part of his interest under a lease to another retains any reversionary interest, the transaction is considered a sublease). To ignore the underlying co-tenant agreement would require us to effectively rewrite the ordinance to require that it apply only to a rental by the owner of the

11

house or to the first "rental" in a series of transactions covering the 30-day period. *See, e.g.*, *Iliff v. Iliff*, 339 S.W.3d 74, 81–82 (Tex. 2011) ("'We have no right to engraft upon the statute any conditions or provisions not placed there by the legislature.'" (quoting *Duncan, Wyatt & Co. v. Taylor*, 63 Tex. 645, 649 (1885)).

The Andings also contend that the STR ordinance is unconstitutionally vague as applied because the City has issued a citation—unadjudicated for now—in a situation where the Andings had entered into a 30-day lease with only one signatory. This means, the Andings contend, that the City is improperly construing the STR ordinance to require mandatory, physical occupancy by a tenant for the full term of a 30-day lease, even where there is only one tenant under a 30-day lease. We agree that under a plain-meaning review, the applicability provision does not impose a physical-occupancy or -use requirement. The "30 consecutive days" requirement refers to the duration of the rental, not the duration of the use or occupancy. *See* Austin, Tex. Code § 25-2-789(A)(1) (applying the ordinance to short-term rental that "*is rented for periods of less than 30 consecutive days*") (emphasis added). But the City's potentially improper construction does not render the ordinance unconstitutionally vague absent something in the ordinance that "*invites* arbitrary and discriminatory enforcement." *See Benton*, 980 S.W.2d at 437. As we explained above, the applicability provision gives fair notice of the types of conduct that are subject to regulation. The fact that the provision does not expressly list every fact pattern that would not be subject to the STR ordinance does not make the ordinance vague and, importantly, it does not *invite* the City to expand the scope of the ordinance beyond its plain language. *See Pennington*, 606 S.W.2d at 689 ("'Most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out

12

prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded.' Statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." (quoting *United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963))).

We hold that the applicability provision of the STR ordinance is not unconstitutionally vague as it was applied to the Andings. A reasonable person of ordinary intelligence has fair notice of the type of conduct that renders a rental subject to the STR ordinance. *See Benton*, 980 S.W.2d at 437. Likewise, the applicability provision is not so vague and standardless as to leave the City free to decide, without any legally fixed guidelines, what conduct and transactions are covered by the STR ordinance, such that it invites arbitrary and discriminatory enforcement. *See Pennington*, 606 S.W.2d at 689.

**The Andings' Request for Mandamus Relief**

The Andings asked the district court to compel "the ministerial act that Judge Clervi apply the law correctly where the facts and circumstances demonstrate that there is only one rational decision." The correct law to be applied, according to the Andings' petition, is that their leases are exempt from the STR ordinance because their leases are for 30 days or more. Clervi asserted a plea to the jurisdiction, arguing that the district court lacked jurisdiction over the Andings' petition for writ of mandamus because the Andings have an adequate remedy at law and they do not seek to compel a ministerial act. *See, e.g.*, *Walker v. Packer*, 827 S.W.2d 833, 839–41 (discussing grounds for mandamus relief). The district court sustained Clervi's plea and dismissed the Andings' petition. On appeal, the Andings assert that the district court erred in

13

sustaining Clervi's plea because the district court has jurisdiction over their request for mandamus relief. We agree.

The district court has exclusive original jurisdiction over mandamus proceedings except when the Texas Constitution or a statute confers original jurisdiction in another tribunal. *In re Nolo Press/Folk Law, Inc.*, 991 S.W.2d 768, 775 (Tex. 1999) (orig. proceeding). The Texas Constitution empowers trial courts to issue writs of mandamus to compel public officials to perform ministerial acts. Tex. Const. art. V, § 8. An original proceeding for a writ of mandamus initiated in the trial court is a civil action subject to trial and appeal on substantive issues and rules of procedure as any other civil suit. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 n.1 (Tex. 1991). Thus, the trial court had jurisdiction to consider the Andings' action seeking mandamus relief against Clervi, in his capacity as a municipal court judge. *See Thompson v. Velasquez*, 155 S.W.3d 551, 553–54 (Tex. App.—San Antonio 2004, no pet.) (holding district courts have general mandamus jurisdiction over municipal courts).

Clervi argued, and the district court apparently agreed, that mandamus was not available because the Andings had an adequate remedy by appeal and because the relief sought was not the performance of a ministerial act. Such a ruling would not, however, operate to deprive the district court of subject-matter jurisdiction over the Andings' claim. Instead, such a conclusion would dictate the denial of the requested mandamus relief, a decision that could then be appealed as in any other civil suit. We express no opinion on the merits of the relief the Andings seek. However, because the district court had subject-matter jurisdiction over the Andings' request for a writ of mandamus against Clervi, we hold that it erred in granting the plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("A plea

14

to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit.").

## Conclusion

For the reasons stated, we conclude that the district court did not err in denying the Andings' motion for summary judgment and in granting the City's motion for summary judgment. Accordingly, we affirm the district court's summary judgment in favor of the City. For the reasons stated, we also conclude that the district court did err in sustaining Clervi's plea to the jurisdiction. We therefore reverse the district court's order sustaining the plea and remand the Andings' mandamus claim against Clervi to the district court for further proceedings.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed in Part; Reversed and Remanded in Part

Filed:   April 29, 2020