JIM STEPHENSON MOTOR COMPANY, INC. and Bradshaw Limited, Inc. d/b/a Texas Classic Autos, Appellants,

v.

Merle H. AMUNDSON, Appellee.

No. 05–85–00575–CV.

Court of Appeals of Texas, Dallas.

April 11, 1986.

Rehearing Denied May 20, 1986.

Bruce W. Bowman, Jr., Dallas, Frank P. Skipper, Fort Worth, for appellants.

Ivan M. Scott, Jr., Dallas, for appellee.

Before VANCE, DEVANY and HOW-ELL, JJ.

## ON MOTION FOR REHEARING

DEVANY, Justice

We grant the appellants' motion for rehearing, withdraw our former opinion and judgment of January 31, 1986, and substitute this opinion affirming the judgment of the trial court.

Jim Stephenson Motor Company, Inc. (SMC) and Bradshaw Limited, Inc. d/b/a Texas Classic Autos (TCA) appeal a judgment under the Deceptive Trade Practices Act awarding $55,175 actual damages, $1,000 additional damages and attorney's fees to Merle H. Amundson (Amundson). TCA also attacks the trial court's judgment awarding SMC $56,000 in its cross-action against TCA. Finding no reversible error, we affirm the judgment of the trial court.

In early 1984, Merle Amundson, a California resident, sought to purchase a Mercedes Benz 500 SEC automobile. In order to get the best price available, he sought the aid of his daughter, Ann Amundson, who was familiar with the imported cars market. She, in turn, contacted Diana Devereaux, an unlicensed California street dealer in imports. Devereaux told Ann Amundson that she had found two 500 SEC's but that they would only be sold as a set. Amundson agreed to purchase both cars, which at the time were at the SMC automobile dealership in Dallas. Devereaux stated that the cars were at SMC but could be picked up at TCA. TCA runs SMC's used car department and provides new cars to SMC.

On March 28, 1984, Ann Amundson telephoned TCA prior to paying Devereaux in order to make sure that the cars were there and ready to be picked up. She spoke with Rowena Regier, the office manager at TCA. Regier assured Ann Amundson that the cars were there and that she could pick them up that afternoon. Ann Amundson then paid Devereaux for the cars. Two of Amundson's employees then picked up the two cars at TCA.

Meanwhile, two days after TCA released the two cars to Amundson, Bradshaw, acting on behalf of SMC, contracted to sell the same two cars to D&G International, a company owned by Devereaux. This "sale" occurred on April 18—three weeks after the cars were released to Amundson.

On April 5, Ann Amundson began contacting TCA in an effort to obtain the titles to the cars. On that date, she was told by Ron Bradshaw, the sole owner of TCA, that the titles were in the process of being "quick titled." The cars arrived in California about April 8. Ann Amundson also contacted Regier at TCA about the titles and other documents that were not with the cars. Regier told her that the titles were at the bank. Ann Amundson contacted Regier again on April 18 and was told that Bradshaw was handling the transac-

tions and that she was no longer responsible for them. Ann Amundson testified that she was unable to contact Bradshaw, who did not return her calls. On May 4, Ann Amundson contacted SMC and was told that the titles were at the Department of Motor Vehicles in Sacramento.

What was actually occurring during this time was that SMC was holding the titles waiting for D & G International's draft to be paid. Then, on May 2, the draft issued by D & G International, which draft had been given to SMC, bounced. On May 4, TCA paid SMC for the cars. Devereaux then gave TCA a check for the two cars. Hoping that Devereaux's check would be good, TCA gave the titles to Dan Hangsleben for delivery. Hangsleben was an automobile broker in California who had previously worked for Bradshaw and who also had other business dealings with Devereaux.

One of the two cars which Amundson purchased was in good condition and is not included in this lawsuit. The other, however, could not be licensed in California because it did not comply with Environmental Protection Agency restrictions peculiar to that state. Upon discovering this in the middle of April, Amundson returned the problem car to Devereaux and Hangsleben with the intention of having them resell it for her father. A TCA employee picked up the car from Hangsleben. The trial court found, however, that TCA failed to establish that it paid Hangsleben or Devereaux for this car, which it was purportedly repurchasing from Devereaux. This finding has not been challenged on appeal. TCA then purported to resell the car back to SMC.

After a non-jury trial, the court rendered judgment for Amundson against SMC and TCA, jointly and severally, and for SMC on its cross-claim against TCA. It also made the following findings of fact and conclusions of law relevant to this appeal:

1. The transaction presented to the Court is not governed by the Texas Certificate of Title Act because (a) it constitutes litigation between the parties to the transaction and (b) it was at all times a transaction in interstate commerce.

2. At all times material to the transactions in this cause of action, Bradshaw Limited, Inc. dba Texas Classic Autos ("Texas Classic") and its employee, Ronald Bradshaw ("Bradshaw") (in his capacity as an employee of said corporation), acted as agent for Jim Stephenson Motor Company, Inc. ("Stephenson") in the sale, transfer and attempted repurchase of the subject 1984 Mercedes Benz automobile, Serial No. WDBC44A4EA045320 (the "Automobile").

3. Bradshaw was acting within the scope of his authority the actions of Texas Classic are binding on Stephenson with respect to the sale, delivery and attempted repurchase of the subject automobile.

4. On or about March 27 and/or March 28, 1984, Diana Devereaux was authorized by Texas Classic and Stephenson to accept payment for the two Mercedes Benz automobiles at issue herein, and specifically the Automobile which has been the subject of this lawsuit.

5. This authority was ratified by the Defendants when the automobiles were delivered to Merle H. Amundson ("Amundson") or his agent after payment made by Amundson to Ms. Devereaux but before any payment directly to either Texas Classic or Stephenson.

6. As a matter of law, upon the delivery of the automobiles at Fort Worth, Texas on March 28, 1984, legal ownership of title of the two subject automobiles was transferred from Stephenson to Amundson.

7. Dan Hangsleben ("Hangsleben") had actual authority to s[ell] the Automobile on behalf of Plaintif[f] although such actual authority terminated on May 9, 1984.

8. As a result of Plaintiff's leaving the automobile in Hangsleben's possession and continuing to encourage him to market the automobile, Hangsleben's apparent authority continued after that date to sell the Automobile on Plaintiff's behalf.

9. Diana Devereaux had no authority, actual or apparent, to convey the subject automobile in May, 1984 on behalf of Amundson.

10. Texas Classic Autos, acting on behalf of itself and on behalf of Stephenson, attempted to purchase the Automobile in May, 1984 from Diana Devereaux.

11. The Court concludes that such efforts were a nullity, because Ms. Devereaux had no title to convey or no authority to convey a title on behalf of Amundson.

12. The $50,000 payment represented by two cashier's checks purchased by Texas Classic Autos and payable to Hangsleben have not been proven by a preponderance of the evidence to be payments for the repurchase of the Automobile.

13. There is no valid sale of the Automobile from Amundson to any party in May, 1984 or at any other time pertinent to the facts before the Court.

14. As a matter of law, the purported transfers of the Automobile in May, 1984 and thereafter are void.

15. Plaintiff Amundson's damages are in an amount of $55,175.00, plus interest on that sum at 6% per annum from July 23, 1984 to March 6, 1984.

16. The Court finds that Texas Classic and Stephenson acted unconscionably as that term is defined in § 17.50(a)(3) of the Texas Deceptive Trade Practices Consumer Protection Act (the "Act").

17. The Court finds that the unconscionable actions of Texas Classic were committed "knowingly" as that term is defined in § 17.45(9) of the Act and that additional damages would be the sum of $1,000.00.

\* \* \* \* \* \*

21. The cause of action brought by Amundson was not groundless or brought in bad faith for the purpose of harassment.

\* \* \* \* \* \*

We view the critical issue in this case as whether there is sufficient evidence to support Amundson's contention and the trial court's apparent conclusion that this was, in effect, a sale from SMC to Amundson, with Devereaux acting as the agent of SMC. SMC and TCA maintain that the evidence conclusively establishes that Devereaux was not an agent of SMC and that it was Devereaux and not SMC who sold the car in question to Amundson. We conclude that there is sufficient evidence of apparent authority given to Devereaux to support the trial court's judgment.

Amundson urges that Devereaux possessed apparent authority to act for SMC. We conclude that only apparent authority could be deduced from the evidence at trial to support a finding of agency. The trial court, however, did not make an explicit finding of apparent authority. Instead, it stated more generally that "Devereaux was authorized by TCA and SMC." "Authority" and "apparent authority" are terms with different legal meanings. *See* RESTATEMENT (SECOND) OF AGENCY §§ 7 & 8 (1958). Therefore, we would normally hesitate to conclude that the trial court's finding that Devereaux was "authorized" should be treated as inclusive of a finding of apparent authority. However, these findings do not exclude that the trial court found that Devereaux possessed apparent authority. This is borne out in finding number seven in which the trial court found that Hangsleben possessed "actual authority" to sell the car, and in finding number nine in which the trial court found that Devereaux had "no authority, actual or apparent" to resell the car on behalf of Amundson. These findings imply that the trial court intended "authority" to include

apparent authority and that Devereaux acted as an agent for SMC.

The general rule is as follows:

Unless the record shows to the contrary, every reasonable presumption will be indulged in favor of the findings and judgment of the trial court and no presumptions will be indulged against the validity of the judgment.

*Jacobini v. Zimmerman,* 487 S.W.2d 249, 251 (Tex.Civ.App.—Fort Worth 1972, no writ), quoting *Collins v. Tucker,* 333 S.W.2d 218, 220 (Tex.Civ.App.—Fort Worth 1960, no writ). Findings of fact and conclusions of law are to be construed together, and, if the findings of fact are susceptible to different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it. *Gulf Liquid Fertilizer Co. v. Titus,* 163 Tex. 260, 354 S.W.2d 378, 385 (1962). We hold that the trial court's findings are broad enough to encompass apparent authority of Devereaux.

The doctrine of apparent authority is based on estoppel. It may arise either from a person knowingly permitting another to hold himself out as having authority or by a person's actions which lack such ordinary care that they are tantamount to clothing another with an indicia of authority, thus leading a reasonably prudent person to believe that the "agent" has the authority he purports to exercise. *Ames v. Great Southern Bank,* 672 S.W.2d 447, 450 (Tex.1984). The determination of the existence or non-existence of apparent authority in an alleged agent is normally a fact issue. *See Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 930 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Clark v. Texaco, Inc.,* 382 S.W.2d 953, 958 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.).

■ We hold that, in the context of this case, the assurances by SMC and TCA that Amundson could pick the cars up from TCA prior to Devereaux paying for them is sufficient evidence to support a finding of apparent authority. We do not view statements made by the Amundsons that they had purchased the cars from Devereaux as conclusive evidence that Amundson did not purchase the cars from TCA. These statements are consistent with the trial court's finding that Devereaux acted on behalf of SMC. This interpretation is further warranted by other testimony by Amundson that he bought the cars "through" Devereaux. SMC's and TCA's third and fourth points of error are overruled.

■ In their first and second points of error, SMC and TCA each urge that the trial court erred by concluding that the Texas Certificate of Title Act was inapplicable to the movements of the problem car and that, if the Act did apply, as they claim, legal title could not have passed to Amundson because he did not comply with the provisions of the Act. Without addressing the relevance or applicability of the Act to damage awards under the DTPA or to out-of-state purchasers, we hold that the trial court correctly concluded, in light of its finding of authority, that the Act was inapplicable because this was a transaction between parties. *Pfluger v. Colquitt,* 620 S.W.2d 739, 742 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

■ In SMC's and TCA's points of error seven through nine and five through seven, respectively, they complain of the trial court's findings that Devereaux had no actual or apparent authority to resell the car for Amundson; that Devereaux had no title to convey; and that Devereaux's attempted transfer back to TCA was a nullity. SMC and TCA rely on section 2.403 of the Texas Business & Commerce Code, which provides in part:

(b) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

The trial court found, however, that TCA had not met its burden of proving that it paid for the return of the car. Consequently, TCA was not a "buyer in the ordinary course of business." TEX.BUS. & COM. CODE ANN. § 1.201(9) (Vernon 1968). We

hold that the evidence supports these findings by the trial court.

In their points of error ten and eight, respectively, SMC and TCA urge that the trial court erred by finding that SMC acted unconscionably. Unconscionable action or course of action is defined in the DTPA as:

an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience or capacity of the person to a grossly unfair degree; or

(B) results in gross disparity between the value received and the consideration paid in a transaction involving transfer of consideration.

TEX.BUS. & COM.CODE ANN. § 17.45(5) (Vernon Supp.1986).

■ SMC and TCA argue that, because the car was originally sold for $57,015 and SMC repurchased it several months later from TCA for $56,000, there can be no finding of gross disparity. As Amundson points out, however, the DTPA contemplates that the relevant inquiry is the disparity between the value received by the plaintiff compared with the consideration paid. Under this analysis, as a net result of the acts of SMC and its agents, Amundson paid $55,175 for a car which was not in deliverable condition and in effect was repossessed from him and for which he was not reimbursed. We conclude that there is sufficient evidence of unconscionability to support the trial court's finding.

In their points of error eleven and nine, respectively, SMC and TCA urge that Amundson is not a consumer as that term is defined in the Act. Their basis for this contention is ambiguous. In any event, it is undisputed that Amundson bought or at least attempted to buy a car. Under the agency theory found by the trial court, SMC was the seller. The one case SMC and TCA cite for support, *Bancroft v. Southwestern Bell Telephone Co.*, 616 S.W.2d 335 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ), held that a person must actually pay for services in order to be a consumer. *Bancroft* has been disap-

proved by another court, *Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612, 616 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), and has recently been overruled by the same court that issued the opinion. *Martin v. Lou Poliquin Enterprises, Inc.*, 696 S.W.2d 180, 182 (Tex.App. —Houston [14th Dist.] 1985, writ ref'd n.r. e.). Additionally, in determining whether there has been a purchase which would support a finding that the plaintiff is a consumer, the case law focuses on the consumer's payment rather than the seller's receipt of payment. *Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 865 (Tex.App.— Austin 1984, writ ref'd n.r.e.).

■ During oral argument, SMC and TCA also appeared to maintain that Amundson was not a consumer because, at the time that the allegedly unconscionable activities were occurring, Amundson was attempting to sell back rather than to acquire the car. This does not alter Amundson's status as a consumer regarding the purchase of the car, and "there is no requirement that the defendant's unconscionable act occur simultaneously with the sale or lease of goods." *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983).

In their points of error twelve and ten, respectively, SMC and TCA argue that the trial court should have awarded them attorney's fees because Amundson's DTPA claim was, as a matter of law, groundless and brought in bad faith. Again, we disagree. The trial court found in favor of Amundson under its primary DTPA theory, and we conclude that the evidence supports the judgment.

In its points of error five and six, SMC argues that the trial court improperly held that the acts of TCA bound SMC because TCA was an independent contractor rather than an agent of SMC. While TCA may indeed have normally operated as an independent contractor, this does not preclude a finding of agency relating to the particular transactions at issue. *Clark v. Texaco,*

*Inc.*, 382 S.W.2d 953, 958 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.).

Bradshaw, the owner of TCA, was listed in the sales documents to Devereaux as the salesman; Bradshaw was to receive a commission on the sale; and Bradshaw was required to have the sale approved by SMC's sales manager. The trial court properly concluded that TCA acted as SMC's agent in the sale of the car.

SMC contends that the issue of agency in the initial sale should be distinguished from the issue of agency regarding the attempted repurchase of the car. We conclude, however, that in light of the undisputed close association between SMC and TCA, the agency in the sale of the car, and the fact that it was understood that the car would be returned to SMC upon TCA's regaining possession of it, the trial court correctly ruled that TCA's actions bound SMC.

Finally, TCA argues that the trial court erred in entering judgment for $56,000 in favor of SMC on its cross-claim against TCA. The undisputed evidence, however, is that SMC advanced TCA $56,000 for TCA to regain the car for SMC. The trial court's finding that TCA failed to establish that it paid Hangsleben for the return of the car is unchallenged. Thus, the trial court's award of $56,000 was authorized.

The judgment of the trial court is affirmed.