**HENRY S. MILLER CO.**

v.

**Douglas BYNUM and Starfire Engineering, Inc., d/b/a Tiffany's Hair Styles.**

No. 01–88–00926–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 8, 1990.

Rehearing Denied Sept. 13, 1990.

**52**

Joseph O. Slovacek, Houston, for appellant-relator.

John C. Riddle and George M. Bishop, Houston, for appellee-respondent.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

## OPINION

EVANS, Chief Justice.

This is an appeal from a judgment for the plaintiff in a Deceptive Trade Practices action.

Douglas Bynum, Jr. and Starfire Engineering, Inc., d/b/a Tiffany's Hair Styles ("Bynum"), sued defendants, Richard E. Dover ("Dover") and Henry S. Miller Company ("Miller"), alleging various violations of the Deceptive Trade Practices Act. Tex. Bus. & Com.Code Ann. sec. 17.41 et seq. (Vernon Supp.1988). Bynum alleged that Miller, a commercial leasing agent representing a Mr. Riddle and Dover, offered him space in the Wood Winds Shopping Center as a prospective site for his beauty shop. According to Bynum, Miller represented the Wood Winds Center: (1) was a Riddle development; (2) was "almost fully occupied"; (3) would have only "first class" establishments; and (4) was a "Riddle" center with standardized tenant regulations, high quality construction, and good maintenance. Bynum asserted that, on the basis of these representations, he leased space in April 1984 for the operation of his beauty shop. During the two years that followed, he discovered that Miller's representations were false. He said the center's restrictions and rules were unevenly and inconsistently applied and did not affect all occupants uniformly. Moreover, the center's occupancy rate did not conform to what he had been told, and the center was not operated as a "first class" center. During his occupancy, numerous problems occurred: the center was poorly maintained; there was "soft and runny" tar in the parking lot; there were frequent water interruptions, flooding, and breaks in the main water lines due to poor construction; and stacks of debris and construction materials were left on site for long periods of time. He also discovered that Riddle was not the owner and developer of the center, and that Riddle did not even own the parking lot. As a consequence of these problems, Bynum had to sell his beauty shop business in January 1986. He alleged nonrefundable leasehold expenses of $33,511, lost capital investment after depreciation of $60,426, and $212,448 in lost profits.

Miller filed a cross-claim against the other defendants seeking indemnity and contribution. The cause was submitted to the court without a jury, which rendered judgment in favor of Bynum against all defendants except Dover, who had been dismissed before trial. The court's judgment awarded Bynum $60,426 as actual damages and additional damages of $120,852. Because the judgment did not dispose of Miller's cross-action against Dover, it was interlocutory in nature. The court later en-

tered a final judgment disposing of all parties and issues in the case. That judgment is the subject of this appeal.

In separate findings of fact and conclusions of law, the trial court found that Miller made misrepresentations to Bynum. Miller, among other things, stated:

(a) that the Wood Winds Shopping Center would be a John C. Riddle Development;

(b) that the center would be a "first class" shopping center;

(c) that the center was almost "wholly leased out";

(d) that the regulations of the center would be applied to all tenants, including Bynum, in a uniform manner;

(e) that construction debris would be cleaned from the center at least daily;

(f) that the center would be advertised to induce more prospective customers of Bynum's to use the center;

(g) that the amount of rent was justified in light of the quality and quantity of services the center would provide; and

(h) that the center, including the parking lot, was wholly owned by John C. Riddle and John Riddle Interests.

The trial court found that Bynum relied upon these and other representations, which were either made verbally by Miller or in sales brochures and a tenant's package given to Bynum by one of Miller's sales agents. The court found that Bynum would not have entered into the lease but for these representations, which were false, misleading, or deceptive, and knowingly made in reckless disregard for the truth. The court further found that John C. Riddle and John Riddle Interests, through their exclusive sales agent, Henry S. Miller Company, made these same representations to Bynum, upon which he relied; that but for such representations, he would not have entered into the lease; and that such representations were false, misleading, or deceptive, and knowingly made in reckless disregard for the truth. The court found that Bynum had suffered damages in the amount of $60,426.

In its conclusions of law, the court found that Henry S. Miller Company had violated the Deceptive Trade Practices Act, in that it had: (a) caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of its services; (b) caused confusion or misunderstanding as to its affiliation, connection, or association with John C. Riddle and John Riddle Interests; (c) represented that goods and services of the shopping center had sponsorship, approval, characteristics, uses, benefits, or qualities that they did not have; (d) represented that goods and services of the shopping center were of particular standard, quality, or grade when they were of a lesser standard, quality, or grade; and (e) represented that the lease agreement conferred rights, remedies, and obligations it did not have.

The court further concluded that it was unnecessary for the plaintiff to send prior written notice to the defendants, if such was not done, because of the possibility of the statute of limitations barring the plaintiff's claim. The court found that John C. Riddle and John Riddle Interests violated the Deceptive Trade Practices Act for each of the same reasons as specified for Miller, and that they also breached express warranties in their lease and sales brochures, as well as implied warranties to provide the highest quality management at the Wood Winds Shopping Center.

On this appeal, Miller does not challenge any of the trial court's findings of misrepresentations, which constitute violations of the Deceptive Trade Practices Act. Thus, we must consider those facts as having been established as a matter of law, and as establishing a basis of liability under the Deceptive Trade Practices Act. Miller contends only that there is no evidence or insufficient evidence to prove it had knowledge of the falsity of such representations.

In its first four points of error, Miller contends that the evidence is legally and factually insufficient to support the trial court's award of damages in the amount of $60,426. Miller's contention, in essence, is that the trial court's damage award cannot be sustained because Bynum failed to offer any evidence showing that his claimed expenditures were reasonable and necessary.

■ Under the Deceptive Trade Practices Act, an aggrieved consumer is entitled to an award of "actual damages." Tex. Bus. & Com.Code Ann. sec. 17.50(b)(1) (Vernon 1987). The term "actual damages" has been defined as those damages recoverable at common law. *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex. 1988). In a Deceptive Trade Practices action, damages are awarded to compensate the consumer for the "actual loss" sustained as a result of the defendant's conduct. *Kish v. Van Note,* 692 S.W.2d 463, 466 (Tex.1985). Damages in such a case will usually be measured either by the "benefit of the bargain" theory, *i.e.,* the difference between the value represented and any value actually received, or the "out-of-pocket" theory, *i.e.,* the difference between the value lost and any value received. *Bankston,* 754 S.W.2d at 128. But, as the concurring opinion in *Bankston* explains, these remedies are not exclusive, and a court may adopt a measure that is the most appropriate for the particular case. *Id.; Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 367 (Tex.1987); *see also* Tex.R.Civ.P. 301.

Under the express terms of his lease, Bynum was required to pay rentals of $17,-280 per year, or a total of $34,560 for the first two years of his five-year lease. He testified that in order to meet the requirements of his lease and to open his beauty salon, he was required to make expenditures totaling $64,676, of which amount he was reimbursed $8,622 by Miller. Bynum offered a chart showing his gross receipts during the first 21 months of his operation. He said the beauty shop made a profit for a couple of months, but that these profits ceased because of business disruptions. He finally sold his business for $23,000. Bynum testified, without objection, that after he subtracted the $23,000 sales price from the amount of his total capital investment, his net capital loss, after depreciation, was $60,426. Bynum explained that his net capital loss represented the amount he had been required to put into the lease venture, less the amount he had received from the venture. Miller did not controvert this testimony.

■ When a consumer makes a purchase in reliance upon misrepresentations actionable under the Deceptive Trade Practices Act, the actual damages recoverable under the Act are to be determined by the "total loss" sustained by the consumer as a result of the deceptive trade practice. *Gibbs v. Main Bank of Houston,* 666 S.W.2d 554, 560 (Tex.App.—Houston [1st Dist.] 1984, no writ). The consumer's "total loss" may be established by showing the total amount of the consumer's payments, less any profits or other benefits remaining in the consumer's hands. *Id.; see also Woo v. Great Southern Acceptance Corp.,* 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). The consumer's net economic loss is a proper measure of compensation under the Deceptive Trade Practices Act. *See Sam Montgomery Oldsmobile Co. v. Johnson,* 624 S.W.2d 237 (Tex.App.—Houston [1st Dist.] 1981, no writ).

■ Here, the trial court obviously decided that a fair method of compensating Bynum was to return to him the amount of his net capital loss. This, in essence, was the total amount of his loss, less the amount, if any, of any value received and retained. Miller does not specifically complain of the trial court's use of this measure of compensation, and complains only that the evidence is insufficient to support the trial court's award. We find that the trial court acted within its discretion in deciding to use this measure of recovery, and we find the evidence legally and factually sufficient to support its award.

We overrule Miller's first four points of error.

In the fifth point of error, Miller contends the trial court erred in overruling its "motion to modify, correct or reform judgment" because the evidence was factually insufficient to show that it had any knowledge that the representations complained of by Bynum, which were contained in any brochure or publication regarding the Wood Winds Shopping Center, were false. In a related sixth point of error, Miller contends the court erred in overruling its motion for entry of judgment because

there was no evidence that it had knowledge of the falsity of such representations. In these points of error, and also in the trial court motions referred to therein, Miller simply contends the evidence is legally and factually insufficient to support the trial court's award of $60,426.00 as actual damages.[1]

Under its points of error five and six, Miller argues that "one cannot be held liable under the DTPA for failure to disclose facts about which he does not know." Bynum, in response, points out that Miller was found to have made affirmative misrepresentations of fact, which do not involve the element of scienter. Thus, Bynum argues, he was not required to prove Miller's knowledge of the falsity of such misrepresentations in order to establish Miller's liability for actual damages under the Deceptive Trade Practices Act.

■ We agree with Bynum's argument and overrule Miller's contentions. When a seller makes representations to a buyer, it is under a duty to know if the representations are true. *Robinson v. Preston Chrysler–Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex.1982). Similarly, the seller's agent is liable for affirmative misrepresentations, notwithstanding the agent's lack of knowledge or notice of the falsity thereof. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540–41 (Tex. 1981); *see also Canada v. Kearns*, 624 S.W.2d 755, 756 (Tex.App.—Beaumont 1981, no writ).

In *Cameron,* the plaintiffs had purchased a house listed through the defendant, Terrell & Garrett, the seller's real estate agent. In listing the home for sale, Terrell & Garrett published a summary of information stating that the house had 2400 square feet of heated and air conditioned space. A jury found Terrell & Garrett misrepresented the square footage of the house, violating the provisions of the Deceptive Trade Practices Act, but the trial court entered a take-nothing judgment n.o.v. in favor of the defendant. Affirming

that judgment, the Fort Worth Court of Appeals concluded that Terrell & Garrett were not liable, as a matter of law, because there was no evidence putting them on notice that the information supplied by the seller was false or that they undertook to verify the accuracy of the seller's representations. *Cameron v. Terrell & Garrett, Inc.*, 599 S.W.2d 680, 682–83 (Tex.Civ.App. —Fort Worth 1980), *rev'd*, 618 S.W.2d 535 (Tex.1981). Reversing the judgments of both lower courts, the Texas Supreme Court concluded that Terrell & Garrett were liable for their affirmative misstatements of fact under the Deceptive Trade Practices Act, notwithstanding that no privity existed between the sales agent and the consumer. *Cameron,* 618 S.W.2d at 535, 540–41.

■ Miller does not challenge the trial court's findings that it made false, misleading, or deceptive representations, which constitute violations of the Deceptive Trade Practices Act. These unchallenged findings show affirmative misrepresentations of fact, not merely a failure to disclose facts. Thus, Bynum was not required to prove Miller's knowledge of the falsity of such misrepresentations in order to establish Miller's liability for actual damages under the Deceptive Trade Practices Act. *Robinson,* 633 S.W.2d at 503; *Cameron,* 618 S.W.2d at 540.

We overrule the fifth and sixth points of error.

In Miller's seventh and eighth points of error, it contends that the evidence is legally and factually insufficient to establish that its conduct was a producing cause of Bynum's loss.

■ Under these points, Miller argues that there was no evidence that its misrepresentations regarding standardized architectural signage and paint was a producing cause of Bynum's ultimate loss when he was forced to sell his business. We overrule these points. Miller's argument overlooks the trial court's unchallenged find-

---

**1.** Miller does not argue, under these points of error, that Bynum was not entitled to the amount awarded by the court as additional

damages. Therefore, that matter is not before us for consideration. *San Jacinto River Authority v. Duke,* 783 S.W.2d 209 (Tex.1990).

ings of a variety of misrepresentations, which establish a broad basis for the court's judgment. The trial court was entitled to look at the entire transaction in determining whether Miller's misrepresentations constituted a producing cause of Bynum's loss. *See Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983); *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694 (Tex.1979); *Jim Stephenson Motor Co., Inc. v. Amundson*, 711 S.W.2d 665, 671 (Tex.App.—Dallas 1986, writ ref'd n.r.e). We conclude that there is sufficient evidence to support the trial court's finding that Miller's misrepresentations were a producing cause of Bynum's loss.

Miller's seventh and eighth points of error are overruled.

In Miller's points of error nine through 13, it contends that the trial court erred in awarding additional damages and in overruling its plea in abatement because there is no evidence that appellant sent the demand letter required by the Texas Deceptive Trade Practices Act, Tex.Bus. & Com. Code Ann. sec. 17.505 (Vernon 1987). That section provides, in pertinent part:

> If the giving of 30 day's written notice is rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations or if the consumer's claim is asserted by way of counterclaim, the notice provided for in (a) of this section is not required, but the tender provided for by subsection (c) of this section and by subsection (d), Section 17.506 of this subchapter may be made within 30 days after the filing of the suit or counterclaim.

The purpose of the notice specified in section 17.505 of the Deceptive Trade Practices Act is to facilitate the early settlement of the dispute and to give the alleged wrongdoer an opportunity to avoid exposure to additional damages and attorney's fees. *Pool Co. v. Salt Grass Exploration, Inc.*, 681 S.W.2d 216, 219 (Tex.App.—Houston [1st Dist.] 1984, no writ). The statute is in furtherance of the strong policy of Texas law favoring settlement of disputes.

*See Hernandez v. Telles*, 663 S.W.2d 91 (Tex.App.—El Paso 1983, no writ); *see also* Tex.Civ.Prac. & Rem.Code Ann. sec. 154.-001 (Vernon 1987). The defense set forth in section 17.505 is an affirmative defense, and the burden of pleading and proving the defense is on the party asserting it. *American Petrofina, Inc. v. P.P.G. Indus.*, 679 S.W.2d 740, 748 (Tex.App.—Fort Worth 1984, writ dism'd); *Chrysler–Plymouth City, Inc. v. Guerrero*, 620 S.W.2d 700, 706 (Tex.Civ.App.—San Antonio 1981, no writ). When the pleading and proof show that the consumer failed to give the required notice, the proper relief is abatement of the action, rather than dismissal of the suit. *Moving Co. v. Whitten*, 717 S.W.2d 117, 124 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Sunshine Datsun, Inc. v. Ramsey*, 680 S.W.2d 652, 655 (Tex.App.—Amarillo 1984, no writ); *Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872, 875 (Tex.App. —Fort Worth 1984, no writ).

The transcript reflects that this suit was filed on May 9, 1986, and that the plaintiff's second amended original petition was filed on December 7, 1987. In that petition, Bynum alleged:

> Notice was not sent to Defendant pursuant to Section 17.50A, Texas Deceptive Trade Practices Act, prior to filing this suit because of the necessity of filing suit in order to prevent the possible expiration of the statute of limitations on all of Plaintiff's claims. A notice letter will be promptly sent to the Defendants and, in the event an acceptable settlement to the claims set forth herein are timely received, Plaintiff will file a motion that this suit be dismissed.

The transcript does not show whether a subsequent notice was sent to the defendants, but the petition does pray for actual and treble damages and attorney's fees. The transcript also contains Miller's plea in abatement filed June 16, 1988, just six days before the trial date, which asserts that the plaintiff failed to give written notice, as required by section 17.505, and asked the court to abate the cause for 30 days so that notice could be given. There is nothing in the record showing that the court held a

hearing on Miller's plea in abatement, and if so, what evidence was presented at that hearing. Neither does the record contain an order or docket entry showing the court's ruling on the plea in abatement. Indeed, the only ruling contained in the record is expressed in the court's findings of fact, which indicate that the plea had been overruled.

Miller asserts that a hearing was, in fact, held on its plea in abatement, and that the trial court overruled the plea when Bynum's attorney explained to the court that the statute of limitations was about to run on his cause of action and that he could not send the requisite demand letter before filing suit. Miller takes the position that it was Bynum's burden to offer evidence at the hearing or at trial to overcome the averments in its plea in abatement.

■ The mere filing of a plea in abatement, without presentment to the trial court and without offer of evidence in its support, usually amounts to a waiver of the plea. *Schaff v. Nash*, 193 S.W. 469, 470 (Tex.Civ.App.—Amarillo 1917, no writ); 3 R. McDonald, Texas Civil Practice in District and County Courts sec. 10.13 at 10–12 (rev. 1983). The party asserting a plea in abatement must see that the record correctly reflects the proceedings before the trial court and the court's ruling on the plea. *Schaff*, 193 S.W. at 470. Here, the plaintiff's petition alleged circumstances that, under the statute, excused his failure to give Miller 30 days written notice before filing suit. Even assuming that the court held a hearing on Miller's plea, the court was required to accept Bynum's allegations as true, and to view his allegations in the light most favorable to his contentions. *Brazos Elec. Power Coop., Inc. v. Weatherford Indep. School Dist.*, 453 S.W.2d 185, 189 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.). Here, the record does not contain any evidence supporting the allegations of Miller's plea in abatement, and because the face of Bynum's petition does not admit the validity of such allegations, Miller waived any error in the court's denial of the plea. *Id.*

Miller's points of error 12 and 13 are overruled.

■ In Miller's points of error 14 and 15, it contends that the trial court erred in admitting Bynum's testimony on the facts because his response to interrogatories did not list his name, address, and telephone number as a party who had knowledge of facts that were relevant to the issues in the suit.

Because of Bynum's failure to respond to Miller's interrogatories, the trial court refused to allow Bynum to testify as an expert regarding the beauty shop business, and it also refused to allow Bynum's attorney to testify regarding attorney's fees. But the court did permit Bynum, as the principal party plaintiff in the lawsuit, to testify about the facts relating to his claim. The record shows that Miller had previously taken Bynum's deposition in a proceeding lasting over several days, and that all of Bynum's receipts and other documents were then delivered to Miller's possession. From the evidence before it, the court could have found that Miller was fully aware of the nature and extent of Bynum's testimony, and that Miller had access to all relevant documents.

When Bynum started to testify, Miller's counsel objected that Bynum had failed to list himself as a witness in response to written interrogatories. Bynum's counsel then explained to the court that he had not responded to the interrogatories because after receiving them, Bynum's deposition was taken. He explained that Bynum, in his deposition, had answered all of Miller's questions, and that he had given Miller copies of "every exhibit that we have in this case ... which is essentially all that they were asking for, anyway." Bynum's counsel said he assumed, because he never heard anything more from Miller's counsel about the interrogatories, that Miller was satisfied with the information obtained during the two-day deposition. After hearing the parties' contentions, the court ruled that it would permit Bynum to testify only as a fact witness, and that it later would rule on any objections made to testimony as an expert witness. When Bynum later

sought to offer his own expert testimony as an expert witness, the court refused to permit him to do so.

Under the particular circumstances shown, the trial court did not abuse its discretion in ruling that Bynum could testify as a fact witness, but not as an expert witness. Although the trial court did not make an express finding of "good cause," its finding on that issue is implicit in its ruling that Bynum would be permitted to testify about his factual knowledge.[2] The court evidently decided that there were reasonable grounds for Bynum's not having listed himself as a fact witness, while there was no justification for Bynum's failure to designate himself as an expert witness.

In deciding whether good cause existed for Bynum's testimony as a fact witness, the trial court was entitled to consider:

(1) that Bynum, the party plaintiff in the lawsuit, would obviously be a principal witness at the trial of the case;

(2) that Miller had already taken Bynum's deposition and was fully cognizant of Bynum's claims and his intended testimony at trial.

In ruling that Bynum could testify as a fact witness, but not as an expert witness, the trial court could reasonably have concluded that Miller was fully aware of Bynum's status as a potential fact witness and that Bynum had knowledge of facts relevant to the suit.

We do not suggest that the "good cause exception" to the sanctions of automatic exclusion will always be satisfied by the taking of a witness' deposition before trial, or by showing the absence of surprise or unfairness to the other party when a witness is not identified pursuant to Tex.R. Civ.P. 166b. *See Sharp,* at 671. (holding such circumstances did not warrant a finding of good cause as to counsel's offer of his own testimony as an expert witness on the subject of attorney's fees).

Here, we are presented with a set of circumstances different from those in *Sharp* and other cases where good cause has not been established. In this case, it was quite obvious to all concerned that Bynum was a "potential" party witness who had "knowledge of relevant facts." He was the principal party plaintiff and an extensive deposition had been taken of him concerning the claims he asserted against Miller in the suit. The trial court admitted his testimony as a fact witness, *not* as an expert witness. We accordingly hold that the trial court did not abuse its discretion in permitting Bynum to testify *as a fact witness* about the transactions forming the basis of his suit against Miller.

Because the issues raised by Miller's points of error 16 and 17 are rendered immaterial by our disposition of Miller's other points of error, we need not further discuss those issues.

The trial court's judgment is affirmed.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I respectfully dissent. I believe we should reverse the judgment for plaintiffs and render judgment for defendant.

After Bynum took possession of the leased space, he complained to John Riddle Interests, his landlord, that: (1) the asphalt in the parking lot was runny; (2) construction debris was left in the area; and (3) the water was cut off on three separate occasions. Bynum claimed that these and other problems caused him to lose his business, and he sued John Riddle Interests and Henry S. Miller Company (Miller), among others. After a non jury trial, the trial court rendered judgment for Bynum against Miller and filed findings of fact and conclusions of law to support the judgment.

---

**2.** We agree with the statement of the Fourteenth Court of Appeals in *Tri–State Motors Trans. Co. v. Nicar,* 765 S.W.2d 486, 491 (Tex.App.—Houston [14th Dist.] 1989, no writ), that the language in *Walsh v. Mullane,* 725 S.W.2d 263, 264 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), regarding an "express finding" of good cause,

should "not be read as a broad requirement that a finding of good cause must affirmatively appear in the record to support a trial court's discretionary admission of testimony." *Tri–State Motors Trans. Co.,* 765 S.W.2d at 491; *see also Sharp v. Broadway Nat'l Bank & Amy Sue Cavender,* 784 S.W.2d 669 (1990) (per curiam).

## I. REASONABLENESS OF DTPA DAMAGES.

Miller challenges the damages in four points of error, complaining that Bynum did not produce any evidence of "out-of-pocket" or "benefit of the bargain" damages. Hence, Miller argues, Bynum did not meet its burden of proof. I agree.

The majority holds that under the Deceptive Trade Practices Act (DTPA), the aggrieved party is entitled to actual damages, which the majority admits are those damages recoverable under common law, citing *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex.1988). The *Bankston* opinion said the common law damages are either "out-of-pocket" or "benefit of the bargain." The *Bankston* opinion then said:

> The DTPA permits a Plaintiff to recover either the "out-of-pocket" or the "benefit of the bargain" damages, whichever is greater.

*Id.* The majority, however, ignores that language and quotes the concurring opinion in *Bankston* that says the two measures listed by the majority opinion are not exclusive. I do not believe we can rely on a statement in the concurring opinion that is in conflict with the majority opinion.

The majority also cites *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex.1987). In *Birchfield*, however, the supreme court discussed the election between exemplary and treble damages under the DTPA. Actual damages were not at issue.

## II. EVIDENCE OF MISREPRESENTATIONS.

### A. *Waiver.*

The first question is whether Miller waived its points challenging the findings of misrepresentation. Because Miller did not direct the points of error at the twelve findings of fact, the majority holds that the findings are established as true.

While it is true that Miller did not parenthetically refer to the findings of fact under its points of error, I believe that was merely a technical error.[1] Miller challenged those findings in its point of error when it claimed:

> Plaintiff is not entitled to an award in this case because there was no evidence or insufficient evidence or, in the alternative, it is against the great weight of the admissible evidence that Henry S. Miller Company had knowledge of the material facts complained of by this buyer but failed to disclose them.

I would hold that Miller preserved its complaint that it had no knowledge that the representations it made on behalf of John Riddle Interests were false. If necessary, Miller could supplement its points of error by adding the parenthetical references to the challenged findings.

### B. *Liability of agent for statements of the principal.*

The majority holds that a real estate agent is absolutely liable for any information it transmits to a customer from the principal. The majority also holds that it is not necessary for a plaintiff to prove the agent knew that the statements were false.

### 1. *The "misrepresentations."*

The trial court held Miller liable for treble damages for the following representations that Miller made for John Riddle Interests: the shopping center would be a first class shopping center;[2] the center was almost wholly leased;[3] another beauty

---

1. Rule 74(d), Tex.R.App.P., "Points of Error," requires that the point of error identify the page of the record where the matter complained of is to be found. In an appeal from a non jury case, points of error generally identify the findings of fact that are challenged by a parenthetical reference following the point. Here, for example, the point of error should have been followed by the statement: "(Germane to findings of fact....)."

2. At trial, Bynum was the only witness who testified the shopping center was not a first class shopping center. William Rowell and Peter Zieben (Miller leasing agents) and John Riddle testified it was.

3. Zieben testified that, when Bynum signed the lease, the shopping center was more than 75% leased.

shop was looking at the space;[4] the regulations of the shopping center would be uniformly enforced;[5] the construction debris would be removed daily;[6] the center would be advertised to induce customers to use the center;[7] the rent was justified in light of the services of the center; the shopping center was wholly owned by John Riddle Interests;[8] and the manager of the shopping center would be available after hours.

These representations were contained in a brochure prepared by John Riddle Interests. There is no evidence in this record that the representations were not true. The only evidence that John Riddle Interests was not a first class developer was Bynum's conclusionary statement that it was not. Bynum's testimony, without more, could not establish that John Riddle Interests was not a "first class developer." Except for the large pads owned by the anchor tenants,[9] John Riddle was the owner-developer of the shopping center.

Bynum sued Miller only as the agent of John Riddle Interests. Miller was not sued as the alter ego of John Riddle Interests, and Bynum made no allegations that Miller knew or should have known the representations in the brochure were not true.

### 2. *The majority's holding.*

The majority holds that an agent is responsible for the principal's misrepresentation, even though the agent is unaware of the falsity of the representation. The majority holds that Miller's knowledge is not a pertinent issue, and cites *Cameron v. Ter-*

rell & Garret, Inc., 618 S.W.2d 535, 540–541 (Tex.1981) to support its statement:

> [T]he seller's agent is liable for affirmative misrepresentations, notwithstanding the agent's lack of knowledge or notice of the falsity thereof.

If we read both the court of appeals' opinion and the supreme court's opinion in *Cameron,* we can infer that the supreme court decided that an agent is always liable for all representations of the principal. *Cameron v. Terrell & Garrett, Inc.,* 599 S.W.2d 680, 682 (Tex.Civ.App.—Fort Worth 1980), *rev'd,* 618 S.W.2d 535 (Tex.1981). The supreme court in *Cameron,* however, addressed only the issue of who was a consumer under the DTPA. The court held that an agent was subject to a DTPA suit because the DTPA says that a consumer may sue "any person." *Cameron,* 618 S.W.2d at 541.

If the supreme court wants the lower courts and the litigants to understand that agents are strictly liable under the DTPA, I think the court should come out and say so. This is far too important an issue to leave to the implied reasoning of the two *Cameron* opinions.

If *Cameron* stands for the principle that an innocent agent in a DTPA suit is responsible for credible statements it transmits on behalf of the principal, it seems to be in conflict with other opinions of the supreme court: *Karl and Kelly Co. v. McLerran,* 646 S.W.2d 174, 175 (Tex.1983) (the agent-owners of the corporation were not individually liable because the plaintiffs did not plead and prove alter ego); *Light v. Wil-*

---

4. Rowell testified that he told Bynum that two other beauty parlors were interested in the space. Bynum did not offer any proof to the contrary.

5. The testimony at trial was that, except for the anchor tenants, the signs, paint color, and architecture were uniform.

6. Zieben testified that it was normal to have some debris around during construction.

7. Rowell testified he never told Bynum that the center would be advertised.

8. Bynum's attorney asked Zieben to confirm that Couch Mortgage Company owned the center. Zieben said Riddle was the owner. He

testified that Couch had owned the raw land before Riddle purchased and developed it.

Zieben testified that every shopping center has "anchor" tenants who own their own pad. They are a draw for the entire center. Zieben testified that John Riddle told him that the center was a John Riddle development. The other witnesses confirmed Zieben's testimony. No one testified that John Riddle Interests was not the owner and developer.

9. The anchor tenants were Walgreen's, Kroger, K–Mart, and Bennigan's. Bynum told Miller he wanted to be in a center by a large anchor tenant, and he preferred Kroger.

*son,* 663 S.W.2d 813, 814–815 (Tex.1983) (even though the agent was the sole owner of the corporation and was the corporate representative who made the false statement, the agent was not individually liable because the corporation was not a sham).

Before the *Cameron* decision, in most of the cases that held an agent liable under the DTPA, the agent was closely related to the corporation. In those cases, the courts held agents liable when at least two of the following factors were present: (1) the corporation was a sham; (2) the agent was an owner, officer, or director of the corporation; (3) the agent knew the statement was false; (4) the agent created the false statement.

For example, in *Weitzel v. Barnes,* 691 S.W.2d 598, 601 (Tex.1985), the court held the agent was individually liable: the agent was an owner; the agent knew the statement was false; and the agent created the false statement. In *Barclay v. Johnson,* 686 S.W.2d 334, 336 (Tex.App.—Houston [1st Dist.] 1985, no writ), this Court held the agent was individually liable: the agent was the chairman of the board; the agent knew the statement was false; and the agent created the false statement. In *Greater Am. Homebuilders, Inc. v. Gerhart,* 708 S.W.2d 8, 11 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e), this Court held the agent individually liable: the corporation was a sham; the agent was the president of the corporation; and the agent created the false statement.

Today, this Court holds an agent liable when none of those factors are present. Here, the corporation was not a sham; the agent was not an owner, officer, or director of the corporation; the agent did not know the statement was false; and the agent did not create the false statement.

I do not think we should follow *Cameron* and ignore other DTPA cases involving an agent's liability for representations made for the principal.

## III. THE UNIDENTIFIED WITNESS.

On November 3, 1987, Miller filed interrogatories asking Bynum to name all experts and identify each potential party or witness who had knowledge of the facts. Miller also filed a proposed pre-trial order, listing its witnesses, as required by a docket control order. Miller moved to dismiss Bynum's suit because Bynum did not participate in the joint pre-trial order. The trial court warned Bynum to respond to all discovery but overruled Miller's motion to dismiss. Bynum did not respond to the interrogatories.

The majority characterizes Bynum's failure to answer interrogatories as a "technical failure to comply with the discovery rules." I challenge that assertion. The trial court specifically instructed Bynum to file answers to the interrogatories before trial. Bynum was also required to file a pre-trial order listing witnesses. Violation of direct instructions is hardly a technical violation of the rules.

### A. *The offer of witnesses.*

Bynum offered three witnesses at trial: Bynum (as a fact *and* an expert witness), Mrs. Bynum (as a fact witness), and Bynum's attorney (as an expert witness on attorneys fees). When Bynum took the stand, Miller objected because Bynum had not responded to the interrogatories and was not listed as a witness. The trial court made a distinction between a fact and expert witness, and permitted Bynum to testify as a fact witness, but not as an expert. Here are the two objections, and the court's rulings:

> *Miller's attorney:* Your Honor, we will object to any testimony on the issue regarding what was represented to [Bynum] or his testifying as a witness in this matter, based on the facts of their failure to answer interrogatories in this matter.
>
> *Bynum's attorney:* Your Honor, if I may respond to that?
>
> They sent us interrogatories. Clearly I didn't answer them. I overlooked them because right after that they took a two-day deposition of Dr. Bynum, where he answered every one of their questions and gave them copies of every exhibit that we have in this case and everything we had from this thing, which is essen-

tially all that they were asking for, any-way.

So I assumed, then, that counsel, as they never said anything more about answering interrogatories, as we had given them all of the information that they had wanted in the two-day deposition. They cannot show any harm in any way.

*The Court:* I am going to permit the witness to testify as a party witness, as a fact witness. If they get into expert matters, then I will listen to your objection and look closer at the interrogatories at that time.

Later, when Bynum was offered as an expert witness, the following colloquy took place:

*Bynum's attorney:* [Bynum] was not designated in the interrogatories, but he testified about this very same thing in his deposition.

*The Court:* Well, as I understand the current law, it is automatic that he doesn't testify unless you show good cause for not listing him.

*Bynum's attorney:* Your Honor, good cause would be that we gave information and that they had questioned him thoroughly for three days on this subject....

*The Court:* [F]urnishing him for deposition and giving testimony does not satisfy the requirement for his being listed in the interrogatories....

The majority acknowledges that the trial court did not make an express finding of "good cause," but holds that such a finding is implicit in its ruling permitting Bynum to testify. I do not believe we can read a good cause finding into this record.

Bynum offered two excuses for not filing answers to the interrogatories and listing Bynum as a witness: (1) his attorney "overlooked" the interrogatories; and (2) Bynum was deposed by Miller. The trial court found that furnishing Bynum for deposition *did not satisfy the good cause requirement.* The trial court then made two conflicting rulings: (1) Bynum could

testify as a *fact* witness; and (2) Bynum could not testify as an *expert* witness.

Once a litigant proves that its opponent did not list a witness in response to interrogatories, the sanction is automatic. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex. 1986). To escape the automatic sanction, the party who calls the unidentified witness must show good cause why the answers were not supplemented. *Gutierrez v. Dallas Indep. School Dist.,* 729 S.W.2d 691, 694 (Tex.1987). The burden was on Bynum to show a good cause for not identifying witnesses. Here, when the trial court said furnishing Bynum for deposition did not satisfy the good cause requirement, it implicitly found that Bynum did not prove good cause.[10] Yet, in spite of that finding, the court only imposed the automatic sanction against Bynum as an expert witness, not as a fact witness.

In the recent case of *Sharp v. Broadway Nat. Bank,* 784 S.W.2d 669 (1990), the supreme court held that an unidentified witness could not testify, even though his deposition had been taken. The majority says our case is different from *Sharp* because "it was quite obvious to all concerned that Bynum was a 'potential' party witness who had 'knowledge of relevant facts.'" In *Sharp,* the bank, who was offering two unidentified witnesses, argued that its opponents knew it was going to offer testimony of certain witnesses on a certain subject. The bank orally identified the witnesses in advance of trial. The supreme court rejected the bank's arguments:

> The absence of surprise, unfairness, or ambush does not alone satisfy the good cause exception to the sanction of automatic exclusion.

*Sharp,* at 671.

The majority identifies another distinction between *Sharp* and our case. In *Sharp,* the unidentified witnesses were just witnesses; in this case, the unidentified witness was a party to the suit. The majority cites no authority to support this exception to the rule. If the supreme court

---

10. In *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 395, n. 2 (Tex.1989), the supreme court said that, although lack of surprise is not

the standard, it may be a factor when deciding whether good cause exists for permitting the testimony of an undisclosed witness.

wants to create an exception for parties, it will do so.[11]

The majority justifies the admission of Bynum as a fact witness because he was excluded as an expert witness. The supreme court has never made a distinction between the "good cause" necessary to excuse the identification of a fact witness as opposed to an expert witness. *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.*, 701 S.W.2d 243, 246–47 (Tex. 1985). In *Gee*, 765 S.W.2d at 396, the supreme court applied the same standard to fact witnesses as to expert witnesses. When Bynum failed to show good cause, the trial court should have automatically excluded Bynum as a fact witness as well as an expert witness. *Morrow*, 714 S.W.2d at 297, 298.

### B. *The standard of review.*

The majority applied the abuse of discretion standard to the review of the question whether there was good cause to permit Bynum to testify. I do not believe that is the correct standard. We use the abuse of discretion standard only when the party offering the witness proves good cause. *Gee*, 765 S.W.2d at 396. Here, Bynum did not prove good cause. Bynum's only excuse was that he forgot.

Because there was no proof of good cause, we must use the rule 81(b) standard of review. *Gee*, 765 S.W.2d at 396; TEX.R. APP.P. 81(b)(1). We must determine: (1) if the trial court committed error; and (2) if the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). We must review the entire record to evaluate the harm. *Gee*, 765 S.W.2d at 396.

### C. *Harm of the testimony.*

In *Gee*, the supreme court said the test of harm is whether the result of the case depended on testimony that should have been excluded. *Gee*, 765 S.W.2d at 396.

The court held that if the testimony was merely cumulative, it was not harmful. *Id.* If, however, the testimony was dispositive, the testimony was harmful. *Gee*, 765 S.W.2d at 396; *see also Clark v. Trailways*, 774 S.W.2d 644 (1989); *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989).

### D. *Was Bynum's testimony harmful?*

If Bynum's testimony was dispositive, it was harmful under the *Gee* rule. In order to determine if Bynum's testimony was harmful, we must review the record to see if: (1) his testimony was merely cumulative; and (2) his testimony was material.

Bynum's testimony was not cumulative of other evidence. No other witness testified for Bynum on the issue of liability and damages. Bynum's testimony was material because he was the only witness to testify about his discussions with Miller and his testimony was essential to his recovery. Without Bynum's testimony, the trial court would have been compelled to enter a directed verdict for all defendants.

I would hold that the trial court erred in permitting Bynum to testify. A review of the record without his testimony would require us to reverse the judgment and render in favor of Miller. *Sharp*, at 671–72.

### MOTION FOR REHEARING

EVANS, Chief Justice.

In its motion for rehearing, Miller argues that we erroneously stated it did not challenge the trial court's findings that Miller made misrepresentations in violation of the Deceptive Trade Practices Act. Miller asserts, in its motion for rehearing, that our statement is in error because Miller did complain, in the trial court and on appeal, that the evidence is legally and factually insufficient to support the court's findings that Miller had *knowledge* of the falsity of the material facts complained of.

We reject Miller's argument. Miller's complaint at trial and on this appeal is

---

**11.** Two plaintiffs brought this suit: Douglas Bynum, Jr. and Starfire Engineering, Inc., d/b/a Tiffany's Hair Styles. The majority's new rule leaves serious questions: Does each named party get to present one unidentified fact witness, or is each side limited to one unidentified fact witness? Who may a corporation call to testify as its unidentified fact witness?

**64**

simply that the evidence does not show it had *knowledge* of undisclosed material facts. Miller does not, in any of its points of error, challenge the trial court's findings that Miller made *affirmative misrepresentations* of fact. Thus, the trial court's findings of such misrepresentations must be upheld as a matter of law.

The motion for rehearing is denied.

O'CONNOR, J., dissents.